UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES G. CONNELL, III,

                *Plaintiff*,

    v.

CENTRAL INTELLIGENCE AGENCY,

                *Defendant*.

Civil Action No. 21-0627 (CRC)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

Preliminary Statement ..............................................................................................................1

Factual and Procedural Background ........................................................................................2

Standard of Review ...................................................................................................................2

Argument ...................................................................................................................................8

    I.      The CIA Conducted a Reasonable Search ...............................................................8

    II.    The CIA Properly Relied On Exemptions 1 and 3 As A Basis
           For its Glomar Response. ......................................................................................12

           A. The CIA Properly Asserted a Glomar Response Under FOIA Exemption 1. ........14

           B. The CIA Properly Asserted a Glomar Response Under FOIA Exemption 3. ........16

    III.   The CIA Properly Withheld Document C06833121
           Pursuant to FOIA Exemption 1. .............................................................................17

    IV.   The CIA Properly Withheld Document C06833121
           Pursuant to FOIA Exemption 3. .............................................................................19

    V.    The CIA Properly Witheld Document C06833121
           Pursuant to FOIA Exemption 5. .............................................................................21

    VI.   The CIA Fulfilled Its Segregability Obligations……………………………….22

Conclusion ...............................................................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*ACLU v. U.S. Dep't of Def.*,
628 F.3d 612 (D.C. Cir. 2011)........................................................3, 14

*Agrama v. IRS*,
282 F. Supp. 3d 264 (D.D.C. 2019) ...............................................19

*Afshar v. Dep't of State*,
702 F.2d 1125 (D.C. Cir. 1983)........................................................3

*Am. Ctr. for Law & Justice v. NSA*,
474 F. Supp. 3d 109 (D.D.C. 2020) ...............................................10

*Armstrong v. Exec. Office of the President*,
97 F.3d 575 (D.C. Cir. 1996)...........................................................19

*Ass'n of Retired R.R. Workers v. U.S. R.R. Retirement Bd.*,
830 F.2d 331 (D.C. Cir. 1987).....................................................2, 16

*Baker & Hostetler LLP v. Dep't of Com.*,
473 F.3d 312 (D.C. Cir. 2006)..............................................4-5, 8, 17

*Benjamin v. Dep't of State*,
178 F. Supp. 3d 1 (D.D.C. 2016) ...............................................3, 11

*Boyd v. Crim. Div.*,
475 F.3d 381 (D.C. Cir. 2007).........................................................19

*Brown v. Dep't of State*,
317 F. Supp. 3d 370 (D.D.C. 2018) ...............................................17

*Cal. Air Res. Bd. v. EPA*,
2020 WL 2934914 (D.D.C. June 3, 2020) .....................................17

*Canning v. Dep't of Justice*,
567 F. Supp. 2d 104 (D.D.C. 2008) ...............................................19

*Carter v. NSA*,
962 F. Supp. 2d 130 (D.D.C. 2013) ..................................................9

*Ctr. for Nat'l Sec. Studies v. Dep't of Just.*,
331 F.3d 918 (D.C. Cir. 2003)......................................................2-3

*CIA v. Sims*,
471 U.S. 159 (1985)...................................................................13, 17

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980) ............................................................................17-18

*Defenders of Wildlife v. U.S. Border Patrol*,
623 F. Supp. 2d 83 (D.D.C. 2009) ............................................................................2

*Fitzgibbon v. CIA*,
911 F.2d 755 (D.C. Cir. 1990) ............................................................................3, 11

*Frugone v. CIA*,
169 F.3d 772 (D.C. Cir. 1999) ............................................................................3, 9

*Goland v. CIA*,
607 F.2d 339 (D.C. Cir. 1978) ............................................................................12

*Halperin v. CIA*,
629 F.2d 144 (D.C. Cir. 1980) ............................................................................13

*In Def. of Animals v. Nat'l Insts. of Health*,
543 F. Supp. 2d 83 (D.D.C. 2008) ............................................................................2

*Iturralde v. Comptroller of Currency*,
315 F.3d 311 (D.C. Cir. 2003) ............................................................................4

*James Madison Project v. CIA*,
344 F. Supp. 3d 380 (D.D.C. 2018) ............................................................................12-13

*Jud. Watch, Inc. v. U.S. Dep't of Def.*,
715 F.3d 937 (D.C. Cir. 2013) ............................................................................10, 14

*Jud. Watch, Inc. v. Dep't of the Navy*,
25 F. Supp 3d 131 (D.D.C. 2014) ............................................................................2

*King v. Dep't of Justice*,
830 F.2d 210 (D.C. Cir. 1987) ............................................................................3, 11

*Larson v. Dep't of State*,
565 F.3d 857 (D.C. Cir. 2009) ............................................................................3, 9, 13-14

*Lesar v. U.S. Dep't of Just.*,
636 F.2d 472 (D.C. Cir. 1980) ............................................................................14

*Loving v. Dep't of Def.*,
550 F.3d 32, 37 (D.C. Cir. 2008) ............................................................................17

*Mead Data Cent., Inc. v. Dep't of Air Force*,
566 F.2d 242 (D.C. Cir. 1977) ............................................................................19

*Mobley v. CIA*,
806 F.3d 568 (D.C. Cir. 2015) ........................................................... 5, 13

*Morley v. CIA*,
699 F. Supp. 2d 244 (D.D.C. 2010) ..................................................... 9

*Nation Magazine v. U.S. Customs Serv.*,
71 F.3d 885 (D.C. Cir. 1995) ............................................................... 4

*Perry v. Block*,
684 F.2d 121 (D.C. Cir. 1982) ............................................................ 5

*Phillippi v. CIA*,
546 F.2d 1009 (D.C. Cir. 1976) ..................................................... 4, 6, 9

*Ray v. Turner*,
587 F.2d 1187 (D.C. Cir. 1978) ........................................................... 3

*SafeCard Servs., Inc. v. SEC*,
926 F.2d 1197 (D.C. Cir. 1991) .......................................................... 5

*Schaerr v. Dep't of Just.*,
*435 F. Supp. 3d 99 (D.D.C. 2020)* ........................................... 10, 12, 14

*Shepherd Conservation Society v. IRS*,
208 F. Supp. 3d 58 (D.D.C. 2016) ...................................................... 9

*Steinberg v. Dep't of Just.*,
23 F.3d 548 (D.C. Cir. 1994) ............................................................... 4

*Summers v. Dep't of Just.*,
140 F.3d 1077 (D.C. Cir. 1998) ........................................................ 19

*Sussman v. U.S. Marshals Serv.*,
494 F.3d 1106, 1117 (D.C. Cir. 2007) .............................................. 19

*Talbot v. CIA*,
578 F. Supp. 2d 24 (D.D.C. 2008) ...................................................... 4

*Valencia-Lucena v. U.S. Coast Guard*,
180 F.3d 321 (D.C. Cir. 1999) ............................................................ 4

*Weisberg v. Dep't of Just.*,
745 F.2d 1476 (D.C. Cir. 1984) ........................................................... 4

*Wheeler v. CIA*,
271 F. Supp. 2d 132 (D.D.C. 2003) ..................................................... 9

*Willis v. NSA*,
2019 WL 1924249 (D.D.C. Apr. 30, 2019)..............................................................2

*Wolf v. CIA*,
473 F.3d 370 (D.C. Cir. 2007)...............................................................9, 13-14

**Statutes, Regulations, Rules, and Other Authorities**

5 U.S.C. § 552.....................................................................................*passim*

50 U.S.C. § 3024..................................................................................13, 16

50 U.S.C. § 3507...........................................................................................17

Executive Order No. 13526, 75 Fed. Reg. 707 (Jan. 5, 2010)..............................*passim*

Fed. R. Civ. P. 56.......................................................................................1, 2

By and through its undersigned counsel, the Defendant, the Central Intelligence Agency ("CIA"), respectfully submits this memorandum of points and authorities in support of its motion for summary judgment. In sum, there exists no genuine issue of material fact that precludes judgment in the CIA's favor as a matter of law in this Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") case.

As set forth below, and pursuant to Federal Rule of Civil Procedure ("Rule") 56, the CIA should be granted summary judgment because no genuine issue of material fact exists, and therefore the Defendant is entitled to judgment as a matter of law.

## PRELIMINARY STATEMENT

Plaintiff, James G. Connell, III ("Plaintiff"), commenced this action on March 8, 2021, pursuant to the FOIA. *See generally* Compl., ECF No. 1. Under the FOIA, the Plaintiff made a request to the CIA, dated May 23, 2017, seeking the production of records concerning "any and all information that relates to such 'operational control' of the CIA over Guantanamo Bay detainees including but not limited to the document cited in footnote 977 [of the Senate Select Committee on Intelligence: Committee Study of the Central Intelligence Agency's Detention and Interrogation Report]." The CIA responded to the Plaintiff's FOIA request and released all responsive, non-exempt records. *See generally* Declaration of Vanna Blaine ("Blaine Decl.").

The CIA has produced all responsive, non-exempt material to the Plaintiff. Accordingly, the CIA asserts that there are no issues of material fact in genuine dispute and that any information not provided was properly withheld pursuant to an exemption under FOIA.

In support of its Motion, the CIA refers this Court to the accompanying Memorandum of Point and Authorities, the Statement of Material Facts as to Which There is no Genuine Dispute, the Declaration of Vanna Blaine, the *Vaughn* Index, and the attached exhibits. A proposed Order is attached.

## FACTUAL AND PROCEDURAL BACKGROUND

The CIA incorporates the Statement of Undisputed Material Facts that is filed contemporaneously with this Memorandum.

## STANDARD OF REVIEW

"Cases arising from an agency's response to a request for records 'typically and appropriately are decided on motions for summary judgment.'" *Willis v. Nat'l Sec. Agency*, Civ. A. No. 17-2038 (KBJ), 2019 WL 1924249, at *4 (D.D.C. Apr. 30, 2019) (granting agency summary judgment in FOIA case) (quoting *Jud. Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 136 (D.D.C. 2014) (Brown Jackson, J.), and *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (Friedman, J.)). Under Rule 56, "a court must grant summary judgment if the pleadings, disclosure materials on file, and affidavits 'show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Willis*, 2019 WL 1924249, at *4 (quoting Fed. R. Civ. P. 56(a)). In the FOIA context, "a district court conducts a *de novo* review of the record, and the responding federal agency bears the burden of proving that it has complied with its statutory obligations." *Willis*, 2019 WL 1924249, at *4 (citing *In Def. of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 83, 92-93 (D.D.C. 2008) (Kollar-Kotelly, J.)).

The issues presented in this case directly "implicat[e] national security, a uniquely executive purview." *Ctr. for Nat'l Sec. Studies v. Dep't of Just.*, 331 F.3d 918, 926-27 (D.C. Cir. 2003). While courts review *de novo* an agency's withholding of information pursuant to a FOIA request, "*de novo* review in FOIA cases is not everywhere alike." *Ass'n of Retired R.R. Workers, Inc. v. U.S. R.R. Ret. Bd*., 830 F.2d 331, 336 (D.C. Cir. 1987). Indeed, courts have specifically recognized the "propriety of deference to the executive in the context of FOIA claims which

implicate national security." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927–28; *see Ray v. Turner*, 587 F.2d 1187, 1194 (D.C. Cir. 1978) ("[T]he executive ha[s] unique insights into what adverse [e]ffects might occur as a result of public disclosure of a particular classified record."). Thus, the agencies' "arguments need only be both 'plausible' and 'logical' to justify the invocation of a FOIA exemption in the national security context." *Benjamin v. Dep't of State*, 178 F. Supp. 3d 1, 4 (D.D.C. 2016) (quoting *ACLU v. Dep't of Def.*, 628 F.3d 612, 624 (D.C. Cir. 2011)).

For these reasons, courts have "consistently deferred to executive affidavits predicting harm to the national security and have found it unwise to undertake searching judicial review." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927; *see Larson v. Dep't of State,* 565 F.3d 857, 865 (D.C. Cir. 2009) ("Today we reaffirm our deferential posture in FOIA cases regarding the 'uniquely executive purview' of national security."); *accord Benjamin*, 178 F. Supp. 3d at 4. Consequently, a reviewing court must afford "substantial weight" to agency declarations "in the national security context." *King v. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987); *see Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990) (holding that the district court erred in "perform[ing] its own calculus as to whether or not harm to the national security or to intelligence sources and methods would result from disclosure"); *Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999) (because "courts have little expertise in either international diplomacy or counterintelligence operations, we are in no position to dismiss the CIA's facially reasonable concerns" about the harm that disclosure could cause to national security). The FOIA "bars the courts from prying loose from the government even the smallest bit of information that is properly classified or would disclose intelligence sources or methods." *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983).

**ARGUMENT**

The CIA's invocation of a *Glomar* response[1] as to investigative and classified sources of potentially responsive records was appropriate as a matter of law. The same is true of its invocation of Exemptions (b)(1), (b)(3), (b)(5), and (b)(6) to withhold a record. As such, the Court should enter summary judgment in the Defendant's favor on the two issues in this case: (1) the Glomar response "on the basis that the question of CIA operational control (or lack thereof) over Camp VII," and (2) the withholding of Document C06833121.

## I.    The CIA Conducted a Reasonable Search

An agency fulfills its obligations under the FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents. *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999). The question "is not 'whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*.'" *Steinberg v. Dep't of Just.,* 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)); *see also Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (explaining that adequacy of a search "is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search"). A FOIA search is sufficient "if the agency makes 'a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Baker & Hostetler LLP v. Dep't of Comm.*, 473 F.3d 312, 318 (D.C. Cir. 2006) (quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)). The reasonableness of a search is judged

---

[1]      This term is derived from the case *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976), concerning the CIA's reported contacts with the media regarding Howard Hughes's ship, the "Hughes Glomar Explorer."

based upon the facts of each case. *Steinberg*, 23 F.3d at 551; *see also Mobley v. CIA*, 806 F.3d 568, 580 (D.C. Cir. 2015) ("This court applies a reasonableness standard to determine whether an agency performed an adequate search."). The agency bears the burden of showing that its search was calculated to uncover all relevant documents.

An agency may establish the adequacy of its search by submitting reasonably detailed, nonconclusory affidavits describing its efforts. *See Baker & Hostetler LLP*, 473 F.3d at 318. It is not obligated to "set forth with meticulous documentation the details of an epic search for the requested records." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991); *see also id.* at 1201 ("Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them."). Absent contrary evidence, the agency's affidavits or declarations are sufficient to demonstrate the agency's compliance with FOIA. *See Perry*, 684 F.2d at 127.

In May 2017, the Plaintiff submitted a FOIA request to the CIA seeking records relating to "'operational control' of the CIA over Guantanamo Bay detainees including but not limited to the document cited in footnote 977 [of the Senate Select Committee on Intelligence: Committee Study of the Central Intelligence Agency's Detention and Interrogation Report]." Blaine Decl. at ¶ 8. On October 24, 2017, the CIA acknowledged receipt of the Plaintiff's request, *id*. at ¶ 9, and on February 8, 2018, the CIA asked the Plaintiff to provide more details about his request in order to understand what information he was trying to obtain. *Id.* at ¶ 10.

On March 8, 2018, the Plaintiff responded and agreed to limit his request to the period of time of "1 September 2006 to 31 January 2007." *Id.* at ¶¶ 10-11. The Plaintiff also clarified

that he was "seeking to determine what 'operational control' means" and provided the following "list of possible topics:"

> (1) Whether CIA "operational control" included only Camp 7 or extended to other facilities such as Echo 2;
> (2) What organization had decision-making authority over Camp 7;
> (3) Whether CIA "operational control" ended before or after 31 January 2007;
> (4) Whether the "operational control" involved CIA personnel, whether employees or contractors;
> (5) Any detainee records maintained by the CIA during the period of "operational control," such as Detainee Inmate Management Systems records or the equivalent;
> (6) How other agencies would obtain access to detainees during the period of "operational control," such as a Memorandum of Understanding with the Federal Bureau of Investigation or Criminal Investigative Task Force;
> (7) How the facilities transitioned from CIA "operational control" to DOD "operation control."

*Id.* at ¶¶ 10-11. On May 4, 2018, the CIA acknowledged receipt of the Plaintiff's March 8, 2018, letter, and acknowledged that the Plaintiff had amended his initial FOIA Request ("Plaintiff's Amended FOIA Request"). *Id*. at ¶ 12.

On September 29, 2020, the CIA responded to the Plaintiff's Amended FOIA Request, stating that it had completed a thorough search for records responsive to the request and had located a document consisting of three pages, which the CIA released in part to the Plaintiff. *Id*. at ¶ 13. With respect to any other records, the CIA issued a *Glomar* response[2] to any requests where confirmation or denial of the existence or nonexistence of responsive records would reveal a classified connection to the Agency. *Id*. The Plaintiff administratively appealed the CIA's response. *Id*. at ¶ 14.

The Plaintiff filed this lawsuit on March 8, 2021, and the CIA filed its Answer on May 17, 2021. On July 15, 2021, the CIA provided a final response to the Plaintiff's Amended FOIA

---

[2]    In *Phillippi*, 546 F.2d at 1013-15, the D.C. Circuit upheld the CIA's use of a "neither confirm nor deny" response to a FOIA request for records. *See* Blaine Decl. at ¶ 13 n.1.

Request. The CIA completed a thorough search for records that would reveal an unclassified or openly acknowledged association between the CIA and the subject of the Plaintiff's Amended FOIA Request, and located two documents, that were released in part with redactions made on the basis of FOIA Exemptions (b)(1), (b)(3), (b)(5), and (b)(6), and one document that was withheld in its entirety based on FOIA Exemptions (b)(1), (b)(3), and (b)(5). *See generally* Blaine Decl. at ¶¶ 19-21. In addition, with respect to any records that may reveal a classified connection between the CIA and the subject of the Plaintiff's Amended FOIA Request, the CIA issued a *Glomar* response, in accordance with section 3.6(a) of Executive Order 13526, as amended, refusing to confirm or deny the existence or nonexistence of such records, as the mere fact of the existence or nonexistence of such records is itself currently and properly classified and relates to CIA intelligence sources and methods information that is protected from disclosure pursuant to FOIA Exemptions (b)(1) and (b)(3). *Id.* at ¶ 16.

On July 29, 2021, the Plaintiff filed a document styled, "Plaintiff's Position on Disclosures" setting forth his position regarding the CIA's final response to his Amended FOIA Request. *See* ECF No. 7. The Plaintiff stated that he (1) accepted the redactions to the documents released in part by the CIA, (2) objected to the complete withholding of document C06833121, and (3) challenged the CIA's *Glomar* response "on the basis that the question of CIA operational control (or lack thereof) over Camp VII has already been declassified." *Id.* On September 30, 2021, the CIA provided a *Vaughn* Index to the Plaintiff justifying its withholding of document C06833121 based on FOIA Exemptions (b)(1), (b)(3), and (b)(5). *See* ECF No. 9.

Here, the CIA's search was limited to records that would reveal an unclassified or openly acknowledged relationship between the CIA and the subject of the Plaintiff's Amended FOIA Request. *See* Blaine Decl. at ¶ 19. The CIA conducted a search of previously released CIA

records in its case management database, which is a repository of all Agency records that have been reviewed and/or compiled for potential release, or that have been previously disclosed to the public. *Id.* at ¶ 20. The CIA employees who performed the searches had access to pertinent records; were knowledgeable about the CIA's records systems; were qualified to search those records; and regularly search those records in the course of their professional duties. *Id.* at ¶ 19. The CIA employees used the following terms, including different variations and combinations of the terms: "Camp 7," "Echo 2," "operational control," "detainee records," "Memorandum," "GTMO/GITMO/Guantanamo," "DOD," and "Department of Defense." *Id.* at ¶ 21. The search was limited to the time period specified by the Plaintiff: 1 September 2006 to 31 January 2007. *Id.* The search yielded three responsive records, two of which were released to the Plaintiff in part with redactions, and one which was withheld in its entirety. *Id*.

In short, based on the facts of this case, the CIA made 'a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *See Baker & Hostetler LLP*, 473 F.3d at 318. The CIA conducted a search that was reasonably calculated to locate all records responsive to the Plaintiff's Amended FOIA Request.[3] Accordingly, the search was reasonable.

---

[3] Significantly, the Plaintiff does not assert that the CIA's search for responsive records was flawed. *See* "Plaintiff's Position on Disclosures, ECF No. 7. Specifically, Plaintiff "objects to the complete withholding of document C06833121 and seeks the production of reasonably segregable unclassified information contained in the document." *Id*. at 2-3. Plaintiff also "challenges the basis of this complete withholding under (b)(1), (b)(3), (b)(5), and (b)(6)." Finally, Plaintiff objects to the CIA's response that it can neither confirm nor deny the existence of additional documents." *Id.* at 3.

**II.     The CIA Properly Relied On Exemptions 1 and 3 As A Basis For its *Glomar* Response.**

The Court affords "substantial weight" to agencies' determinations to assert *Glomar* responses.  *Shepherd Conservation Society v. IRS*, 208 F. Supp. 3d 58, 89 (D.D.C. 2016). Summary judgment is appropriate when an asserting agency puts forth "affidavit[s] explaining in as much detail as is possible the basis for its claim that it can be required neither to confirm nor to deny the existence of the requested records."  *Phillippi*, 546 F.2d at 1013.  Ultimately, the Government can establish the appropriateness of the *Glomar* response by demonstrating that it is "logical" or "plausible."  *Wolf v. CIA,* 473 F.3d 370, 375 (D.C. Cir. 2007).

Courts in this circuit routinely uphold *Glomar* responses where, as here, confirming or denying the existence of records would reveal classified information protected by FOIA Exemption 1 or disclose information protected by statute in contravention of FOIA Exemption 3. *See, e.g.*, *Frugone*, 169 F.3d at 774–75 (finding that CIA properly refused to confirm or deny the existence of records concerning the plaintiff's alleged employment relationship with CIA pursuant to Exemptions 1 and 3); *Carter v. NSA*, 962 F. Supp. 2d 130, 141 (D.D.C. 2013) (upholding the NSA's *Glomar* response to a request for information relating to a specific individual pursuant to Exemption 1); *Morley v. CIA*, 699 F. Supp. 2d 244, 257–58 (D.D.C. 2010) (upholding CIA's *Glomar* response to the plaintiff's request concerning covert CIA operations pursuant to Exemptions 1 and 3); *Wheeler v. CIA*, 271 F. Supp. 2d 132, 140 (D.D.C. 2003) (ruling that CIA properly offered a *Glomar* response to a request for records concerning the plaintiff's activities as a journalist in Cuba during the 1960s pursuant to Exemption 1).

Here, the CIA determined that the existence or non-existence of records responsive to the Plaintiff's Amended FOIA Request about the definition of "operational control" is exempt from disclosure pursuant to FOIA Exemption 1, which protects classified information.  *See* Blaine

Decl. at ¶¶ 27-36. Additionally, the CIA asserted a *Glomar* response pursuant to FOIA Exemption 3 relating to information protected from disclosure by statute. *Id.* at ¶¶ 37-40. Courts have upheld *Glomar* responses under Exemptions 1 and 3 with respect to FOIA requests seeking similar information. *See, e.g., Am. Ctr. for Law & Justice v. NSA*, 474 F. Supp. 3d 109, 118, 121(D.D.C. 2020) (FOIA request seeking unmasking requests); *Schaerr v. Dep't of Just.*, 435 F. Supp. 3d 99, 110-14 (D.D.C. 2020) (FOIA request seeking unmasking requests and upstreaming of the names of the individuals listed in the FOIA request). Each of these grounds is further addressed below.

### A. The CIA Properly Asserted a *Glomar* Response Under FOIA Exemption 1.

FOIA Exemption 1 protects from disclosure information that is "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and "are in fact properly classified pursuant to such Executive Order." 5 U.S.C. § 552(b)(1). Under Executive Order 13526, an agency may withhold information that an official with original classification authority has determined to be classified because its "unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security." Exec. Order 13526 § 1.4, 75 Fed. Reg. 707, 709 (Dec. 29, 2009). The information must also "pertain[ ] to" one of the categories of information specified in the Executive Order, including "intelligence activities (including covert action), intelligence sources or methods." Exec. Order 13526 § 1.4(c); *see also Jud. Watch, Inc. v. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) ("[P]ertains is not a very demanding verb."). As addressed above, when it comes to matters affecting national security, courts afford "substantial weight" to an agency's declarations addressing classified information, *King*, 830 F.2d at 217, and defer to the expertise of agencies involved in national security and foreign relations. *See Fitzgibbon*, 911 F.2d at 766; *see also*

*Benjamin*, 178 F. Supp. 3d at 4.   Pursuant to Executive Order 13526, Section 3.6(a), an agency "may refuse to confirm or deny the existence or nonexistence of requested records whenever the fact of their existence or nonexistence is itself classified[.]"

The CIA's *Glomar* response pursuant to FOIA Exemption 1 was proper because disclosing whether or not it has records responsive to the Plaintiff's Amended FOIA Request about the definition of "operational control" (1) has been determined to be classified by an Original Classification Authority; (2) pertains to intelligence activities and intelligence sources and methods; (3) would damage national security; and (4) is not classified for an improper purpose. Declarant Blaine has Original Classification Authority as required by Executive Order 13526, Section 1.1(a), and has determined that disclosing the existence or non-existence of the Plaintiff's requested documents would reveal classified information.   *See* Blaine Decl. at ¶¶ 3, 26, 30-31.

Revealing the existence or non-existence of the information sought by the Plaintiff would cause "identifiable or describable damage to the national security" because it would reveal highly sensitive national security information relating to the intelligence sources and methods of the CIA. Exec. Order 13526, § 1.4.   Such an acknowledgment also could suggest non-public information regarding the nature of an agency's intelligence interests, priorities, activities, and methods— information that is desired by adversaries who seek to thwart the intelligence-gathering mission. *Id*. at ¶ 34.   Furthermore, acknowledging whether or not responsive records exist would provide non-public details about how an agency acquires, retains, and disseminates foreign intelligence, which in turn would reveal the strengths, weaknesses, and/or gaps in intelligence coverage.   *Id.* at ¶¶ 33-36.

Thus, confirming or denying the existence of responsive records may reveal the use of intelligence methods with respect to particular targets and communications modes and the

intelligence community's interest, or lack of interest, in particular individuals. *Id.* The revelation of this information would be harmful to national security because the information's public disclosure could allow adversaries of the United States, including terrorist organizations, foreign intelligence services, and other hostile groups, to identify the intelligence community's priorities. *Id.*

Finally, the CIA has confirmed that, pursuant to Executive Order 13526, Section 1.7(a), that the information at issue is not classified to "(1) conceal violations of law, inefficiency, or administrative error; (2) prevent embarrassment to a person, organization, or agency; (3) restrain competition; or (4) prevent or delay the release of information that does not require protection in the interest of the national security." *See id*. at ¶ 31.

For the above reasons, including as addressed in other decisions involving FOIA requests seeking similar information, *see, e.g., Schaerr*, 435 F. Supp. 3d 99 at 110-13, the Court should grant summary judgment in favor of the Defendant on the basis of FOIA Exemption 1.

## B. The CIA Correctly Asserted a *Glomar* Response Under FOIA Exemption 3.

FOIA Exemption 3 permits an agency to withhold records that are "specifically exempted from disclosure by statute," provided that the statute either "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). In order to establish whether information falls within Exemption 3, the agency must identify the relevant statute and establish that the information sought falls within that statute. *James Madison Project v. CIA*, 344 F. Supp. 3d 380, 389 (D.D.C. 2018); *see also Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978) (holding that in FOIA Exemption 3 cases "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that

statute's coverage").   The CIA also based its *Glomar* response on FOIA Exemption 3. Specifically, the CIA asserted Exemption 3 in reliance on the National Security Act of 1947.

The National Security Act authorizes the Director of National Intelligence to protect "intelligence sources and methods" as well as to establish and implement guidelines for the intelligence community that balance the need for dissemination of intelligence within the intelligence community while maintaining adequate protections.   50 U.S.C. § 3024(i) (previously codified at 50 U.S.C. § 403-1(i)).   The National Security Act defines the intelligence community to include the ODNI, CIA, NSA, the Bureau of Intelligence and Research of the Department of State, as well as the "intelligence elements" of the FBI.   *Id.* at § 3003.   Courts have long held that the National Security Act qualifies as an Exemption 3 statute under the FOIA.   *See, e.g., Wolf*, 473 F.3d at 378; *Mobley*, 924 F. Supp. 2d at 54-55.   Courts also have recognized that not just the Director of National Intelligence, but also other agencies, may rely upon the amended National Security Act to withhold records under FOIA.   *See, e.g.*, *Larson*, 565 F.3d at 862–63, 865 (permitting the CIA to withhold information under Exemption 3 pursuant to the National Security Act); *Talbot v. CIA*, 578 F. Supp. 2d 24, 28–29 n.3 (D.D.C. 2008) (permitting the State Department to withhold information under Exemption 3 pursuant to the National Security Act).   The Supreme Court has also recognized the "wide-ranging authority" provided by this provision to protect intelligence sources and methods.   *CIA v. Sims,* 471 U.S. 159, 169–70, 177, 180 (1985); *see Halperin v. CIA*, 629 F.2d 144, 147 (D.C. Cir. 1980) (explaining that the only question for the court is whether the agency invoking Exemption 3 pursuant to the National Security Act has shown that responding to a FOIA request "can reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods").

For the reasons discussed above, confirming or denying whether the CIA possesses records responsive to Plaintiff's Amended FOIA Request would divulge information about intelligence sources and methods. *See* Blaine Decl. at ¶¶ 37-40. Because intelligence sources and methods are unambiguously protected from disclosure by the National Security Act, the CIA's invocation of the Act and Exemption (b)(3) is proper. *Am. Ctr. for Law & Justice*, 474 F. Supp. 3d at 121; *Schaerr*, 435 F. Supp. 3d at 114.

## III. The CIA Properly Withheld Document C06833121 Pursuant to FOIA Exemption 1

As stated above, Exemption 1 permits agencies to withhold records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Agencies may establish the applicability of Exemption 1 by affidavit (or declaration). *See ACLU v. Dep't of Def.*, 628 F.3d at 619. "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* (quoting *Larson,* 565 F.3d at 862; quoting *Wolf*, 473 F.3d at 374-75).

Here, the CIA withheld one document in its entirety—Document C06833121—pursuant to FOIA Exemption 1 and Executive Order No. 13526. *See* Blaine Decl. at ¶¶ 42-45. Executive Order No. 13526, the operative classification order under Exemption 1, sets forth both substantive and procedural criteria for classification. *See, e.g., Jud. Watch, Inc. v. Dep't of Def.*, 715 F.3d 937, 940-41 (D.C. Cir. 2013); *see also Lesar v. Dep't of Just.,* 636 F.2d 472, 481 (D.C. Cir. 1980) (explaining that the Executive Order's substantive and procedural criteria must be satisfied for an agency to properly invoke Exemption 1); H.R. Rep. No. 93-1380, at 228-29 (1974) (same). The Order's substantive criteria, as relevant here, are twofold. First, classified information must pertain to at least one of eight subject-matter classification categories. *See* Exec. Order 13526, §§

1.1(a)(3), 1.4.   Second, disclosure of that information must reasonably be expected to cause some

degree of harm to national security—in this case, "intelligence activities (including covert action),

[or] intelligence sources or methods" and "foreign relations or foreign activities of the United

States"— "exceptionally grave" harm—that is identifiable or describable. *See id.* §§ 1.1(a)(4),

1.2(a)(1), 1.4.   The Order also establishes two pertinent procedural requirements.   Information

may be classified only by an individual with original or derivative classification authority, *see id.*

§§ 1.1(a)(1), 2.1, and classified documents must be marked with several pieces of information,

including identity of the classifier and instructions for declassification.   *See id.* §§ 1. 6, 2.1(b).

Here, pursuant to Exemption 1, the CIA properly withheld information in which the CIA satisfied

the procedural and the substantive requirements of Executive Order 13526.

The procedural requirements are met.   First, Ms. Blaine, a senior CIA official, holds

original classification authority at the TOP SECRET level under written delegation of authority

pursuant to Executive Order No. 13526 § 1.3(c).   *See* Blaine Decl. at ¶ 3.   Second, Document

06833121 contains classified information that is properly marked in accordance with section 1.6

of the Executive Order, and the Government owns and controls this information.   *Id.* at ¶¶ 42-45.

Also, the CIA also met the substantive requirements.   The classified information in

Document C06833121, withheld by the CIA, falls under classification categories § 1.4(c) of the

Executive Order because it concerns "intelligence activities (including covert action), [or]

intelligence sources or methods."   *Id.* at ¶ 42.   Further, as Ms. Blaine described, the disclosure of

such sensitive classified CIA information could reasonably be expected to result in damage to

national security.   *Id.* at ¶¶ 42-45.   Specifically, Document C06833121 was withheld in its

entirety because it contains classified information related to the methods that the CIA uses to

collect and analyze intelligence, as well as details relating to a specific aspect of a sensitive CIA

intelligence program/operation. *Id*. at ¶ 45. The disclosure of that information could reasonably be expected to cause damage to national security. *Id*.

Based on the forgoing reasons, the Executive Order's substantive and procedural criteria were satisfied by the CIA, and therefore the CIA properly invoked Exemption 1 to withhold the referenced information.

## IV. The CIA Properly Withheld Document C06833121 Pursuant to FOIA Exemption 3

FOIA Exemption 3 exempts from disclosure information that is specifically exempted from disclosure by statute if the statute:

> (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (b) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3). Exemption 3 differs from other FOIA Exemptions in that "its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Ass'n of Retired R.R. Workers v. U.S. R.R. Retirement Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987) (internal quotation marks omitted).

The CIA withheld Document C06833121 pursuant to Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 3024(i)(1) (the "National Security Act"). *See* Blaine Decl. at ¶¶ 46-47. The National Security Act provides that the Director of National Intelligence (the "Director") "shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(C)(3)(B). Under the direction of the Director pursuant to section 102A, and consistent with section 1.6(d) of Executive Order 12333, the CIA is required to protect CIA intelligence sources and methods from unauthorized disclosure. Further, section 6 of the

16

CIA Act provides that the CIA shall be exempt from the provisions of "any other law" (here, the FOIA and the Privacy Act) that requires the publication or disclosure of the "organization, functions, names, official titles, salaries, or numbers of personnel employed by CIA."   50 U.S.C. § 3507.   Accordingly, under section 6, the CIA is exempt from disclosing information relating to its core functions—which plainly include clandestine intelligence activities—as well as information identifying the names or numbers of personnel.   *Id.*   Here, the statutes "qualif[ies] as a withholding statute under Exemption 3."   *See CIA v. Sims*, 471 U.S. at 167 (the National Security Act of 1947 "qualifies as a withholding statute" under Exemption 3).   For these reasons, the CIA properly invoked Exemption 3 to withhold information that is not subject to disclosure pursuant to the National Security Act.

## V.   The CIA Properly Withheld Document C06833121 Pursuant to FOIA Exemption 5.

The CIA invoked Exemption 5 to protect from release Document C06833121 based on one or more well-recognized privileges—the deliberative process privilege and the attorney-client privilege.   *See* Blaine Decl. at ¶¶ 48-53.

Exemption 5 "'incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant'—including the presidential communications privilege, the attorney-client privilege, the work product privilege, and the deliberative process privilege." *Brown v. Dep't of State*, 317 F. Supp. 3d 370, 376 (D.D.C. 2018) (quoting *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (internal quotation marks and citation omitted)); s*ee also Baker & Hostetler LLP*, 473 F.3d at 321.   It provides protection to 'materials which would be protected under the attorney-client privilege, the attorney work-product privilege, or the executive "deliberative process" privilege.'" *Cal. Air Res. Bd. v. EPA*, Civ. A. No. 19-0965 (CKK), 2020 WL 2934914, at *9 (D.D.C. June 3, 2020) (granting agency summary judgment, including

on Exemption 5 withholdings) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980)).

Here, Ms. Blaine reviewed Document C06833121 and determined that, to the extent it contains any factual material, that information is part of the deliberations, and its disclosure would harm the CIA's deliberative process. *See* Blaine Decl. at ¶ 51. More precisely, the disclosure of this document would reveal the nature of the preliminary recommendations and opinions preceding the final determination by allowing for a comparison between the wording in the final version and the draft. *Id.* By so doing, it would reveal what information was considered significant and what information was insignificant. *Id.* Also, disclosure of Document C06833121 would inhibit the frank communication and free exchange of ideas that the privilege is designed to protect. *Id.* If the withheld information were released, CIA employees may hesitate to offer their candid opinions to superiors or coworkers, and such self-censorship would tend to degrade the quality of Agency decisions. *Id.* Additionally, revealing this information could mislead or confuse the public by disclosing rationales that did not form the basis for the CIA's final decisions. *Id.*

Ms. Blaine also determined that Document C06833121 contained confidential communications using factual information supplied by the client in connection with the request for legal advice, as well as discussions between attorneys that reflected those facts, and legal analysis and advice provided to the client. *Id*. at ¶ 53. If this confidential information were to be disclosed, it would subject the legal guidance to scrutiny and reveal preliminary legal risk analysis and strategy. *Id.* Thus, the CIA properly invoked Exemption 5 to withhold information in Document C06833121.

## VI.  The CIA Fulfilled Its Segregability Obligations

While an agency may properly withhold records or parts of records under one or more
FOIA Exemptions, it "must release 'any reasonable segregable portions' of responsive records that
do not contain exempt information.'"  *Agrama v. IRS*, 282 F. Supp. 3d 264, 275 (D.D.C. 2019);
*see* 5 U.S.C. § 552(b) (requiring "any reasonably segregable portion of a record shall be provided
to [the requester] after deletion of the portions which are exempt").  Non-exempt portions of a
document "must be disclosed unless they are inextricably intertwined with exempt portions."
*Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  To establish
that all reasonably segregable, nonexempt information has been disclosed, an agency need only
show "with 'reasonable specificity'" that the information it has withheld cannot be further
segregated.  *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996);
*Canning v. Dep't of Justice*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008) (Kessler, J.) (granting
summary judgment to agency, including on segregability).  Before approving the application of a
FOIA Exemption, district courts must make specific findings of segregability regarding the
documents to be withheld.  *Summers v. Dep't of Just.*, 140 F.3d 1077, 1081 (D.C. Cir. 1998).
Agencies are entitled to a presumption that they complied with the obligation to disclose
reasonably segregable material.  *Boyd v. Crim. Div.*, 475 F.3d 381, 391 (D.C. Cir. 2007).  That
presumption can only be overcome by some "quantum of evidence" offered by the requester.
*Sussman v. U.S. Marshals Serv.,* 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Here, the CIA identified a total of three (3) documents relating to Plaintiff's Amended
FOIA Request.  *See* Blaine Decl. at ¶¶ 16, 21, 41.  As set forth above, one (1) of those documents
was withheld, and two (2) of those documents were released with redactions made on the basis of
FOIA exemptions (b)(1), (b)(3), (b)(5) and (b)(6).  *Id*. at 16.  Because the two (2) documents

comprised a mixture of material that could be released and material that could trigger harm to one or more interests protected by the cited FOIA Exemptions, the CIA conducted a review and segregated all reasonably segregable, non-exempt information. No further segregation of meaningful information in the documents could be made without disclosing information protected under the law. *Id.; see also Vaughn* Index. Significantly, the Plaintiff "accepts the redactions within the two documents released in part by the CIA (C06902570)." *See* ECF No. 7 at 2. Thus, the CIA released what it could of the responsive records it identified and the CIA complied with its obligation to disclose reasonably segregable material.

## CONCLUSION

For the foregoing reasons, the Court should grant the Defendant summary judgment. A proposed order is enclosed.

Dated: March 28, 2022

Respectfully submitted,

MATTHEW M. GRAVES
D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK,
Acting Chief, Civil Division

*/s/ T Anthony Quinn*
T. ANTHONY QUINN
D.C. Bar No. 415213
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7558
Tony.Quinn2@usdoj.gov

*Attorneys for Defendant*