# Attachment C

MILITARY COMMISSIONS TRIAL JUDICIARY
GUANTANAMO BAY, CUBA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**KHALID SHAIKH MOHAMMAD,<br>WALID MUHAMMAD SALIH<br>MUBARAK BIN ATTASH,<br>RAMZI BINALSHIBH,<br>ALI ABDUL AZIZ ALI,<br>MUSTAFA AHMED ADAM AL<br>HAWSAWI** | **AE 013RRR (GOV)**<br><br>**Government Motion**<br>to Amend AE013DDD Second Amended<br>Protective Order #1 To Protect Against<br>Disclosure of National Security<br>Information<br><br>30 January 2015 |

**1. (U) Timeliness**

(U) On 12 December 2014, the Commission directed the Government to review the Second Amended Protective Order #1 and proffer proposed changes, if necessary, as a result of changes to classification of certain information related to the Central Intelligence Agency ("CIA") former Rendition, Detention, and Interrogation ("RDI") Program no later than 1 February 2015.

**2. (U) Relief Sought**

(U) The Prosecution respectfully requests the Military Judge amend AE 013DDD as explained in the motion below. A proposed protective order is included in this filing as Attachment C.

**3. (U) Burden of Proof**

(U) As the moving party, the Government must demonstrate by a preponderance of the evidence that the requested relief is warranted. *See* R.M.C. 905; *see also*, M.C.R.E. 505.

**4. (U) <u>Facts</u>**

(U)  On 31 May 2011 and 25 January 2012, pursuant to the Military Commissions Act of 2009 ("M.C.A."), charges in connection with the 11 September 2001 attacks were sworn against Khalid Shaikh Mohammad, Walid Muhammad Salih Bin 'Attash, Ramzi Binalshibh, Ali Abdul Aziz Ali, and Mustafa Ahmed Adam al Hawsawi.  These charges were referred jointly to this capital Military Commission on 4 April 2012.  The Accused are each charged with Conspiracy, Attacking Civilians, Attacking Civilian Objects, Intentionally Causing Serious Bodily Injury, Murder in Violation of the Law of War, Destruction of Property in Violation of the Law of War.

(U)  On 26 April 2012, the Government filed a Motion to Protect Against Disclosure of National Security Information and requested the Military Judge issue a protective order pursuant to Military Commission Rule of Evidence ("M.C.R.E.") 505(e). *See* AE 013 (App. 1-46).  The motion and its accompanying declarations set forth the classified information at issue in this case, the grave harm to national security that unauthorized disclosure of such information would cause, and the narrowly tailored remedies sought to protect this national-security information.  *See* AE 013.  Attachments A and B were filed *ex parte* and UNDER SEAL with the Commission.  Attachment B provided guidance regarding the former RDI Program, operated by the CIA and requested certain protective measures to guard against disclosing classified information.

(U)  On 6 December 2012, the Commission issue Protective Order #1 (AE 013P), in order to Protect Against Disclosure of National Security Information.  On 9 February 2013, after considering certain defense motions to amend the Protective Order, the

Military Judge issued a Supplemental Ruling on the Government's Motion To Protect Against Disclosure of National Security Information (AE 013Z) and entered Amended Protective Order #1 (AE 013AA).

(U)  On 17 December 2013, this Commission issued a Second Amended Protective Order (AE 013DDD).  AE 013DDD, consistent with the Government's *ex parte* declarations based on then-current classification guidance, defines "Classified National Security Information and/or Documents," "Classified Information," and "Classified Documents" to include five specific categories of information:

> (a)  Information that would reveal or tend to reveal details surrounding the capture of an accused other than the location and date;

> (b)  Information that would reveal or tend to reveal the foreign countries in which:  Khalid Shaikh Mohammad and Mustafa Ahmed Adam al Hawsawi were detained from the time of their capture on or about 1 March 2003 through 6 September 2006; Walid Muhammad Salih Bin 'Attash and Ali Abdul Aziz Ali were detained from the time of their capture on or about 29 April 2003 through 6 September 2006; and Ramzi Bin al Shibh was detained from the time of his capture on or around 11 September 2002 through 6 September 2006;

> (c)  The names, identities, and physical descriptions of any persons involved with the capture, transfer, detention, or interrogation of an accused or specific dates regarding the same, from on or around the aforementioned capture dates through 6 September 2006;

> (d)  The enhanced interrogation techniques that were applied to an Accused from on or around the aforementioned capture dates through 6 September 2006, including descriptions of the techniques as applied, the duration, frequency, sequencing, and limitations of those techniques; and

> (e)  Descriptions of the conditions of confinement of any of the Accused from on or around the aforementioned capture dates through 6 September 2006.

*See* AE 013DDD, Para. 2(g)(4)(a-e).

(U)  On 9 December 2014, the Senate Select Committee on Intelligence released and Executive Summary of a study entitled "Committee Study of the Central Intelligence

Agency's Detention and Interrogation Program" ("Executive Summary"). Upon release, the unredacted portions of the Executive Summary were declassified; the redacted portions of the Executive Summary, however, as well as the entire underlying study remain classified.

(U) On 12 December 2014, and in response to the release of the declassified Executive Summary, the Commission issued a Trial Conduct Order. AE 331. Within AE 331, the Commission ordered the Government to complete the following tasks:

> (1) Not later than 1 February 2015, the Government will review the *Second Amended* Protective Order #1 [(AE 013DDD)] and proffer proposed changes, if necessary, to reflect the new policies[;]

> (2) Conduct the following reviews, in the order indicated, as to changes wrought by the new policies on classification of national security information:

>> (a) All motions for which the Commission has not taken final action and which are, at this time, either classified or for which there is a classified attachment shall be reviewed an appropriate motion filed indicated the change, if any, in classification;

>> (b) All filings pertaining to Protective Orders requested under the provisions of 10 U.S.C. § 949-p-4, and Military Commission Rule of Evidence ("M.C.R.E.") 505 shall be reviewed an appropriate changes made as to the either summarized, redacted, or classified information; and,

>> (c) All motions containing classified information for which the Commission has taken final action shall be reviewed and an appropriate motion filed indicating the change, if any, in classification.

*See* AE 331 at ¶ 4-5. The Commission then ordered the Government to provide the estimated completion date for each of the reviews in paragraphs 5(a) through 5(c), not later than 1 February 2015. *See id.* at § 6.

(U) On 30 January 2015, the CIA provided additional classification guidance with respect to the former RDI Program. See Attachment B (filed separately due to its

classification). According to Attachment B, the following information is no longer classified:

- (U//FOUO) The fact that the former RDI Program was a covert action program authorized by the President. The fact that the former RDI Program was authorized by the 17 September 2001 Memorandum of Notification (MON).

- (U//FOUO) General allegations of torture by HVDs <u>unless</u> such allegations reveal the identities (*e.g.*, names, physical descriptions, or other identifying information) of CIA personnel or contractors; the locations of detention sites (including the name of any country in which the detention site was allegedly located); or any foreign intelligence service involvement in the HVDs' capture, rendition, detention, or interrogation.

- (U//FOUO) The names and descriptions of the thirteen Enhanced Interrogation Techniques (EITs) that were approved for use, and the specified parameters within which the EITs could be applied.

- (U//FOUO) EITs as applied to the 119 individuals mentioned in Appendix 2 of the SSCI Executive Summary acknowledged to have been in CIA custody.

- (U//FOUO) Information regarding the conditions of confinement as applied to the 119 individuals mentioned in Appendix 2 of the SSCI Executive Summary acknowledged to have been in CIA custody.

- (U//FOUO)  Information regarding the treatment of the 119 individuals mentioned in Appendix 2 of the SSCI Executive Summary acknowledged to have been in CIA custody, including the application of standard interrogation techniques.

- (U//FOUO)  Information regarding the conditions of confinement or treatment during the transfer ("rendition") of the 119 individuals mentioned in Appendix 2 of the SSCI Executive Summary acknowledged to have been in CIA custody.

**5.  (U)  <u>Law and Argument</u>**

The recent changes to classification of certain information related to the former RDI Program described above necessitate changes to AE 013DDD in order to include accurate definitions of classified information related to the pending prosecution.  Based on the new classification guidance, information that is currently defined by the protective order as classified in paragraphs 2g(4)(d) and 2g(4)(e) of AE 013DDD is no longer classified.  The Prosecution, therefore, respectfully requests that the Military Judge issue the amended protective order removing paragraphs 2g(4)(d) and 2g(4)(e) from AE 013DDD.

**6.  (U)  <u>Oral Argument</u>**  The Prosecution does not request oral argument.

**7.  (U)  <u>Witnesses and Evidence</u>**  None.

**8.  (U)  Conference**

(U)  On 28 January 2015, the Government conferenced with the Defense on the subject motion.  Counsel for Mr. Bin 'Attash replied that they "have no access to the classification guides or OCAs for the program(s) in question.  Therefore, we do not

possess the knowledge necessary to determine whether your request to amend AE013DDD encompasses all of the required changes to the Order." Counsel for Mr. Ali and Mr. al Hawsawi stated they took the same position as counsel for Mr. Bin 'Attash. As of the time of this filing, counsel for Mr. Mohammad or counsel for Mr. Binalshibh had not responded to the conference request.

**9. (U) <u>Attachments</u>**

    A. Certificate of Service, dated 30 January 2015

    B. Classification Guidance for Information about the Central Intelligence Agency's Former Rendition, Detention, and Interrogation Program

    C. Proposed Protective Order

Respectfully submitted,

_____//s//_____
Jeff Groharing
Deputy Trial Counsel

Mark Martins
Chief Prosecutor
Office of the Chief Prosecutor
Office of Military Commissions

# ATTACHMENT A

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 30th day of January 2015, I filed AE 013RRR (GOV) the **Government Motion** to Amend AE013DDD Second Amended Protective Order #1 To Protect Against Disclosure of National Security Information with the Office of Military Commissions Trial Judiciary and I served a copy on counsel of record.

_____//s//_____
Jeff Groharing
Deputy Trial Counsel
Office of the Chief Prosecutor
Office of Military Commissions

ATTACHMENT B

(Filed Separately

via SIPRNET)

ATTACHMENT C

**MILITARY COMMISSIONS TRIAL JUDICIARY**
**GUANTANAMO BAY, CUBA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **AE 013____** |
| v. | *Third Amended*<br>**PROTECTIVE ORDER #1** |
| **KHALID SHAIKH MOHAMMAD,**<br>**WALID MUHAMMAD SALIH**<br>**MUBARAK BIN ATTASH,**<br>**RAMZI BINALSHIBH,**<br>**ALI ABDUL AZIZ ALI,**<br>**MUSTAFA AHMED ADAM**<br>**AL HAWSAWI** | **To Protect Against Disclosure of**<br>**National Security Information**<br><br>____ February 2015 |

Upon consideration of the submissions regarding the Government's motion for a protective order to protect classified information in this case, the Commission finds this case involves classified national security information, including TOP SECRET / SENSITIVE COMPARTMENTED INFORMATION (SCI), the disclosure of which would be detrimental to national security, the storage, handling, and control of which requires special security precautions, and the access to which requires a security clearance and a need-to-know. Accordingly, pursuant to authority granted under 10 U.S.C. § 949 p-1 to p-7, Rules for Military Commissions (R.M.C.) 701 and 806, Military Commissions Rule of Evidence (M.C.R.E.) 505, Department of Defense Regulation for Trial by Military Commissions (2011) ¶ 17-3, and the general judicial authority of the Commission, in order to protect the national security, and for good cause shown, the following Protective Order is entered.

**1. SCOPE**

a. This Protective Order establishes procedures applicable to all persons who have access to or come into possession of classified documents or information in connection with this case,

regardless of the means by which the persons obtained the classified information. These procedures apply to all aspects of pre-trial, trial, and post-trial stages in this case, including any appeals, subject to modification by further order of the Commission or orders issued by a court of competent jurisdiction.

b. This Protective Order applies to all information, documents, testimony, and material associated with this case that contain classified information, including but not limited to any classified pleadings, written discovery, expert reports, transcripts, notes, summaries, or any other material that contains, describes, or reflects classified information.

c. Counsel are responsible for advising their clients, translators, witnesses, experts, consultants, support staff, and all others involved with the defense or prosecution of this case, respectively, of the contents of this Protective Order.

## 2. DEFINITIONS

a. As used in this Protective Order, the term "Court Security Officer (CSO)" and "Assistant Court Security Officer (ACSO)" refer to security officers, appointed by the Military Judge, to serve as the security advisor to the judge, to oversee security provisions pertaining to the filing of motions, responses, replies, and other documents with the Commission, and to manage security during sessions of the Commission. The CSO and ACSO will be administered an oath IAW Rule 10, Military Commissions Rules of Court.

b. The term "Chief Security Officer, Office of Special Security" refers to the official within the Washington Headquarters Service responsible for all security requirements and missions of the Office of Military Commissions and to any assistants.

c. The term "Defense" includes any counsel for an accused in this case and any employees, contractors, investigators, paralegals, experts, translators, support staff, Defense

Security Officer, or other persons working on the behalf of an Accused or his counsel in this case.

d. The term "Defense Security Officer" (DSO) refers to a security officer, serving as security advisor to the Defense, who oversees security provisions pertaining to the filing of motions, response, replies, and other documents with the Commission.

e. The term "Government" includes any counsel for the United States in this case and any employees, contractors, investigators, paralegals, experts, translators, support staff or other persons working on the behalf of the United States or its counsel in this case.

f. The words "documents" and "information" include, but are not limited to, all written or printed matter of any kind, formal or informal, including originals, conforming and non-conforming copies, whether different from the original by reason of notation made on such copies or otherwise, and further include, but are not limited to:

(1) papers, correspondence, memoranda, notes, letters, cables, reports, summaries, photographs, maps, charts, graphs, inter-office and intra-office communications, notations of any sort concerning conversations, meetings, or other communications, bulletins, teletypes, telegrams, facsimiles, invoices, worksheets, and drafts, alterations, modifications, changes, and amendments of any kind to the foregoing;

(2) graphic or oral records or representations of any kind, including, but not limited to: photographs, maps, charts, graphs, microfiche, microfilm, videotapes, and sound or motion picture recordings of any kind;

(3) electronic, mechanical, or electric records of any kind, including, but not limited to: tapes, cassettes, disks, recordings, electronic mail, instant messages, films, typewriter

ribbons, word processing or other computer tapes, disks or portable storage devices, and all manner of electronic data processing storage; and

(4) information acquired orally.

g. The terms "classified national security information and/or documents," "classified information," and "classified documents" include:

(1) any classified document or information that was classified by any Executive Branch agency in the interests of national security or pursuant to Executive Order, including Executive Order 13526, as amended, or its predecessor Orders, as "CONFIDENTIAL," "SECRET," "TOP SECRET," or additionally controlled as "SENSITIVE COMPARTMENTED INFORMATION (SCI);"

(2) any document or information, regardless of its physical form or characteristics, now or formerly in the possession of a private party that was derived from United States Government information that was classified, regardless of whether such document or information has subsequently been classified by the Government pursuant to Executive Order, including Executive Order 13526, as amended, or its predecessor Orders, as "CONFIDENTIAL," "SECRET," "TOP SECRET," or additionally controlled as "SENSITIVE COMPARTMENTED INFORMATION (SCI)";

(3) verbal or non-documentary classified information known to an accused or the Defense;

(4) any document or information as to which the Defense has been notified orally or in writing that such document or information contains classified information, including, but not limited to the following:

(a) Information that would reveal or tend to reveal details surrounding the capture of an accused other than the location and date;

(b) Information that would reveal or tend to reveal the foreign countries in which: Khalid Shaikh Mohammad and Mustafa Ahmed Adam al Hawsawi were detained from the time of their capture on or about 1 March 2003 through 6 September 2006; Walid Muhammad Salih Bin "Attash and Ali Abdul Aziz Ali were detained from the time of their capture on or about 29 April 2003 through 6 September 2006; and Ramzi Bin al Shibh was detained from the time of his capture on or around 11 September 2002 through 6 September 2006.

(c) The names, identities, and physical descriptions of any persons involved with the capture, transfer, detention, or interrogation of an accused or specific dates regarding the same, from on or around the aforementioned capture dates through 6 September 2006.

(5) any document or information obtained from or related to a foreign government or dealing with matters of U.S. foreign policy, intelligence, or military operations, which is known to be closely held and potentially damaging to the national security of the United States or its allies.

(6) The terms "classified national security information and/or documents," "classified information," and "classified documents" do not include documents or information officially declassified by the United States by the appropriate OCA.

h. "National Security" means the national defense and foreign relations of the United States.

i. "Access to classified information" means having authorized access to review, read, learn, or otherwise come to know classified information.

j. "Secure area" means a physical facility accredited or approved for the storage,

handling, and control of classified information.

k. "Unauthorized disclosure of classified information" means any knowing, willful, or negligent action that could reasonably be expected to result in a communication or physical transfer of classified information to an unauthorized recipient. Confirming or denying information, including its very existence, constitutes disclosing that information.

## 3. COURT SECURITY OFFICER

a. A Court Security Officer (CSO) and Assistant Court Security Officer(s) (ACSO) for this case have been designated by the Military Judge.

b. The CSO and any ACSO are officers of the court. *Ex parte* communication by a party in a case, to include the Office of Military Commissions, DoD General Counsel, or any intelligence or law enforcement agency, with the CSO/ASCO is prohibited except as authorized by the M.C.A. or the Manual for Military Commissions (M.M.C.). This is to preclude any actual or perceived attempt to improperly influence the Commission in violation of 10 U.S.C. § 949b. This does not include administrative matters necessary for the management of the security responsibilities of the Office of Trial Judiciary.

c. The CSO/ACSO shall ensure that all classified or protected evidence and information is appropriately safeguarded at all times during Commission proceedings and that only personnel with the appropriate clearances and authorizations are present when classified or protected evidence is presented before Military Commissions.

d. The CSO shall consult with the Original Classification Authority (OCA) of classified documents or information, as necessary, to address classification decisions or other related issues.

## 4. DEFENSE SECURITY OFFICER

a. Upon request of Defense Counsel for an accused, the Convening Authority shall provide a Defense Security Officer for the defendant.

b. The Defense Security Officer is, for limited purposes associated with this case, a member of the Defense Team, and therefore shall not disclose to any person any information provided by the Defense, other than information provided in a filing with the Military Commission.  In accordance with M.C.R.E. 502, the Defense Security Officer shall not reveal to any person the content of any conversations he hears by or among the defense, nor reveal the nature of documents being reviewed by them or the work generated by them, except as necessary to report violations of classified handling or dissemination regulations or any Protective Order issued in this case, to the Chief Security Officer, Office of Special Security.  Additionally, the presence of the Defense Security Officer, who has been appointed as a member of the Defense Team, shall not be construed to waive, limit, or otherwise render inapplicable the attorney-client privilege or work product protections.

c. The Defense Security Officer shall perform the following duties:

(1) Assist the Defense with applying classification guides, including reviewing pleadings and other papers prepared by the defense to ensure they are unclassified or properly marked as classified.

(2)  Assist the Defense in performing their duty to apply derivative classification markings pursuant to E.O. 13526 § 2.1(b).

(3)  Ensure compliance with the provisions of any Protective Order.

d. To the fullest extent possible, the classification review procedure must preserve the lawyer-client and other related legally-recognized privileges.

(1) The Defense may submit documents to the Chief Security Officer, Office of Special Security with a request for classification review. If the Defense claims privilege for a document submitted for classification review, the defense shall banner-mark the document "PRIVILEGED."

(2) The Chief Security Officer, Office of Special Security, shall consult with the appropriate OCA to obtain classification review of documents submitted for that purpose. The Chief Security Officer, Office of Special Security, shall not disclose to any other entity any information provided by a Defense Security Officer, including any component of the Office of Military Commissions, except that the entity may inform the military judge of any information that presents a current threat to loss of life or presents an immediate safety issue in the detention facility. This does not include administrative matters necessary for the management of the security responsibilities of the Office of Military Commissions.

(3) Submission of documents for classification review shall not be construed to waive, limit, or otherwise render inapplicable the attorney-client privilege or work product protections.

## 5. ACCESS TO CLASSIFIED INFORMATION

a. Without authorization from the Government, no member of the Defense, including defense witnesses, shall have access to classified information in connection with this case unless that person has:

(1) received the necessary security clearance from the appropriate DoD authorities and signed an appropriate non-disclosure agreement, as verified by the Chief Security Officer, Office of Special Security,

(2) signed the Memorandum of Understanding Regarding Receipt of Classified Information (MOU), attached to this Protective Order, and

(3) a need-to-know for the classified information at issue, as determined by the Original Classification Authority (OCA) for that information.

b. In order to be provided access to classified information in connection with this case, each member of the Defense shall execute the attached MOU, file the executed originals of the MOU with the Chief Security Officer, Office of Special Security, and submit copies to the CSO.

The execution and submission of the MOU is a condition precedent to the Defense having access to classified information for the purposes of these proceedings. The Chief Security Officer, Office of Special Security and CSO shall not provide copies of the MOUs to the Prosecution except upon further order of the Military Commission. The Chief Security Officer can provide the Prosecution the names of the Defense team members, identified on the record, who have executed the MOU. The MOUs for Defense Team members who have been provided *ex parte* may be provided, under seal, to the Chief Security Officer, Office of Special Security, and the CSO under seal and will not be further released without authority of the Commission.

c. The substitution, departure, or removal of any member of the Defense, including defense witnesses, from this case for any reason shall not release that person from the provisions of this Protective Order or the MOU executed in connection with this Protective Order.

d. Once the Chief Security Officer, Office of Special Security verifies that counsel for the Accused have executed and submitted the MOU, and are otherwise authorized to receive classified information in connection with this case, the Government may provide classified discovery to the Defense.

e. All classified documents or information provided or obtained in connection with this case remain classified at the level designated by the OCA, unless the documents bear a clear indication that they have been declassified. The person receiving the classified documents or information, together with all other members of the Defense or the Government, respectively, shall be responsible for protecting the classified information from disclosure and shall ensure that access to and storage of the classified information is in accordance with applicable laws and regulations and the terms of this Protective Order.

f. No member of the Defense, including any defense witness, is authorized to disclose any classified information obtained during this case, outside the immediate parameters of these military commission proceedings. If any member of the Defense or any defense witness receives

any summons, subpoena, or court order, or the equivalent thereof, from any United States or foreign court or on behalf of any criminal or civil investigative entity within the United States or from any foreign entity, the Defense, including defense witnesses, shall immediately notify the military judge, the Chief Security Officer, Office of Special Security, and the Government so that appropriate consideration can be given to the matter by the Commission and the OCA of the materials concerned. Absent authority from the Commission or the Government, the Defense and defense witnesses are not authorized to disseminate or disclose classified materials in response to such requests. The Defense, an Accused, and defense witnesses and experts are not authorized to use or refer to any classified information obtained as a result of their participation in commission proceedings in any other forum, or in a military commission proceeding involving another detainee.

## 6. USE, STORAGE, AND HANDLING PROCEDURES

a. The Office of the Chief Defense Counsel, Office of Military Commissions, has approved secure areas in which the Defense may use, store, handle, and otherwise work with classified information. The Chief Security Officer, Office of Special Security, shall ensure that such secure areas are maintained and operated in a manner consistent with this Protective Order and as otherwise reasonably necessary to protect against the disclosure of classified information.

b. All classified information provided to the Defense, and otherwise possessed or maintained by the Defense, shall be stored, maintained, and used only in secure areas. Classified information may only be removed from secure areas in accordance with this Protective Order and applicable laws and regulations governing the handling and use of classified information.

c. Nothing in this Protective Order shall be construed to interfere with the right of the Defense to interview witnesses, regardless of their location. If the Defense receives a document containing information described in ¶ 2(g) or memorializes information described in ¶ 2(g), while in a non-secure environment, the Defense shall:

(1) Maintain positive custody and control of the material at all times;

(2) Unless under duress, relinquish control of the material only to other personnel with the appropriate security clearance and a need-to-know;

(3) Transport the material in a manner not visible to casual observation;

(4) Not add information (including markings) corroborating the material as classified until returning to a secure area;

(5) Not electronically transmit the information via unclassified networks;

(6) Transport the material to a secure area as soon as circumstances permit; and,

(7) After returning to a secure area, mark and handle the material as classified.

d. Consistent with other provisions of this Protective Order, the Defense shall have access to the classified information made available to them and shall be allowed to take notes and prepare documents with respect to such classified information in secure areas.

e. The Defense shall not copy or reproduce any classified information in any form, except in secure areas and in accordance with this Protective Order and applicable laws and regulations governing the reproduction of classified information.

f. Defense counsel can conduct open source searches from a computer not identifiable with the U.S. government. The raw search material can be stored in an unclassified format or on an unclassified system. However, if an individual has access to classified information, any as information described in ¶¶ 2(g)(2) and 2(g)(4) will be marked or treated as classified in a Military Commissions pleading if the information is specifically referenced to information available in the public domain.

g. **A**ll documents prepared by the Defense that are known or believed to contain classified information, including, without limitation, notes taken or memoranda prepared by counsel and pleadings or other documents intended for filing with the Commission, shall be transcribed, recorded, typed, duplicated, copied, or otherwise prepared only by persons

possessing an appropriate approval for access to such classified information. Such activities shall take place in secure areas, on approved word processing equipment, and in accordance with procedures approved by the Chief Security Officer, Office of Special Security

h. The Defense may submit work product for classification review using the procedures outlined in ¶ 4(d). Except as provided in ¶ 6, all such documents and any associated materials containing classified information or information treated as classified under ¶ 6f and g such as notes, memoranda, drafts, copies, typewriter ribbons, magnetic recordings, and exhibits shall be maintained in secure areas unless and until the OCA or Chief Security Officer, Office of Special Security advises that those documents or associated materials are unclassified in their entirety. None of these materials shall be disclosed to the Government unless authorized by the Commission, by counsel for an Accused, or as otherwise provided in this Protective Order.

i. The Defense may discuss classified information only within secure areas and shall not discuss, disclose, or disseminate classified information over any non-secure communication system, such as standard commercial telephones, office intercommunication systems, or non-secure electronic mail.

j. The Defense shall not disclose any classified documents or information to any person, including counsel in related cases of Guantanamo Bay detainees in Military Commissions or other courts (including, but not limited to, habeas proceedings), except those persons authorized by this Protective Order, the Commission, and counsel for the Government with the appropriate clearances and the need-to-know that information. The Commission recognizes the presentation of a joint defense may necessitate disclosure on a need-to-know basis to counsel for co-accused.

k. To the extent the Defense is not certain of the classification of information it wishes to disclose, the Defense shall follow procedures established by the Office of Military Commissions for a determination as to its classification. In any instance in where there is any doubt as to

whether information is classified, the Defense must consider the information classified unless and until it receives notice from the Chief Security Officer, Office of Special Security, this information is not classified.

l. Until further order of this Commission, the Defense shall not disclose to an Accused any classified information not previously provided by an Accused to the Defense, except where such information has been approved for release to an Accused and marked accordingly.

m. Except as otherwise stated in this paragraph, and to ensure the national security of the United States, at no time, including any period subsequent to the conclusion of these proceedings, shall the Defense make any public or private statements disclosing any classified information accessed pursuant to this Protective Order, or otherwise obtained in connection with this case, including the fact that any such information or documents are classified. In the event classified information enters the public domain without first being properly declassified by the United States Government, counsel are reminded they may not make public or private statements about the information if the information is classified.  (*See* paragraph 2g of this Protective Order for specific examples of information which remains classified even if it is in the public domain). In an abundance of caution and to help ensure clarity on this matter, the Commission emphasizes that counsel shall not be the source of any classified information entering the public domain, nor should counsel comment on information which has entered the public domain but which remains classified.

## 7. PROCEDURES FOR FILING DOCUMENTS

a. See Rule 3, Motion Practice, Military Commissions Trial Judiciary Rules of Court.

b. For all filings, other than those filed pursuant to M.C.R E. 505, in which counsel know, reasonably should know, or are uncertain as to whether the filing contains classified information

or other information covered by Chapter 19-3(b), DoD Regulation for Trial By Military Commission, counsel shall submit the filing by secure means under seal with the Chief Clerk of the Trial Judiciary.

c. Documents containing classified information or information the Defense Counsel believes to be classified shall be filed pursuant to the procedures specified for classified information.

d. Classified filings must be marked with the appropriate classification markings on each page, including classification markings for each paragraph. If a party is uncertain as to the appropriate classification markings for a document, the party shall seek guidance from the Chief Security Officer, Office of Special Security, who will consult with the OCA of the information or other appropriate agency, as necessary, regarding the appropriate classification.

e. All original filings will be maintained by the Director, Office of Court Administration, as part of the Record of Trial. The Office of Court Administration shall ensure any classified information contained in such filings is maintained under seal and stored in an appropriate secure area consistent with the highest level of classified information contained in the filing.

f. Under no circumstances may classified information be filed in an otherwise unclassified filing except as a separate classified attachment. In the event a party believes an unsealed filing contains classified information, the party shall immediately notify the Chief Security Officer, Office of Special Security, and CSO/ACSO, who shall take appropriate action to retrieve the documents or information at issue. The filing will then be treated as containing classified information unless and until determined otherwise. Nothing herein limits the Government's authority to take other remedial action as necessary to ensure the protection of the classified information.

g. Nothing herein requires the Government to disclose classified information. Additionally, nothing herein prevents the Government or Defense from submitting classified information to the Commission *in camera* or *ex parte* in these proceedings or accessing such submissions or information filed by the other party. Except as otherwise authorized by the Military Judge, the filing party shall provide the other party with notice on the date of the filing.

## 8. PROCEDURES FOR MILITARY COMMISSION PROCEEDINGS

a. Except as provided herein, and in accordance with M.C.R.E. 505, no party shall disclose or cause to be disclosed any information known or believed to be classified in connection with any hearing or proceeding in this case.

(1) Notice Requirements

(a) The parties must comply with all notice requirements under M.C.R.E. 505 prior to disclosing or introducing any classified information in this case.

(b) Because statements of an Accused may contain information classified as TOP SECRET/SCI, the Defense must provide notice in accordance with this Protective Order and M.C.R.E. 505(g) if an Accused intends to make statements or offer testimony at any proceeding.

(2) Closed Proceedings

(a) While proceedings shall generally be publicly held, the Commission may exclude the public from any proceeding, *sua sponte* or upon motion by either party, in order to protect information, the disclosure of which could reasonably be expected to damage national security. If the Commission closes the courtroom during any proceeding in order to protect classified information from disclosure, no person may remain who is not authorized to access

classified information in accordance with this Protective Order, which the CSO shall verify prior to the proceeding.

(b) No participant in any proceeding, including the Government, Defense, Accused, witnesses, and courtroom personnel, may disclose classified information, or any information that tends to reveal classified information, to any person not authorized to access such classified information in connection with this case.

(3) Delayed Broadcast of Open Proceedings

(a) Due to the nature and classification level of the classified information in this case, the Commission finds that to protect against the unauthorized disclosure of classified information during proceedings open to the public, it will be necessary to employ a forty-second delay in the broadcast of the proceedings from the courtroom to the public gallery. This is the least disruptive method of both insuring the continued protection of classified information while providing the maximum in public transparency.

(b) Should classified information be disclosed during any open proceeding, this delay will allow the Military Judge or CSO to take action to suspend the broadcast—including any broadcast of the proceedings to locations other than the public gallery of the courtroom (e.g., any closed-circuit broadcast of the proceedings to a remote location)—so that the classified information will not be disclosed to members of the public.

(c) The broadcast may be suspended by the Military Judge or CSO whenever it is reasonably believed that any person in the courtroom has made or is about to make a statement or offer testimony disclosing classified information.

(d) The Commission shall be notified immediately if the broadcast is suspended. In that event, and otherwise if necessary, the Commission may stop the proceedings

to evaluate whether the information disclosed, or about to be disclosed, is classified information as defined in this Protective Order. The Commission may also conduct an *in camera* hearing to address any such disclosure of classified information.

(4) Other Protections

(a)  During the examination of any witness, the Government may object to any question or line of inquiry that may require the witness to disclose classified information not found previously to be admissible by the Commission. Following such an objection, the Commission will determine whether the witness's response is admissible and, if so, may take steps as necessary to protect against the public disclosure of any classified information contained therein.

(b) Classified information offered or admitted into evidence will remain classified at the level designated by the OCA and will be handled accordingly. All classified evidence offered or accepted during trial will be kept under seal, even if such evidence was inadvertently disclosed during a proceeding. Exhibits containing classified information may also be sealed after trial as necessary to prevent disclosure of such classified information.

(5) Record of Trial

(a) It is the responsibility of the Government, IAW 10 U.S.C § 948l(c) to control and prepare the Record of Trial. What is included in the Record of Trial is set out by R.M.C. 1103. The Director, Office of Court Administration, shall ensure that the Record of Trial is reviewed and redacted as necessary to protect any classified information from public disclosure.

(b) The Director, Office of Court Administration, shall ensure portions of the Record of Trial containing classified information remain under seal and are properly

segregated from the unclassified portion of the transcripts, properly marked with the appropriate security markings, stored in a secure area, and handled in accordance with this Protective Order.

## 9. UNAUTHORIZED DISCLOSURE

a. Any unauthorized disclosure of classified information may constitute a violation of United States criminal laws. Additionally, any violation of the terms of this Protective Order shall immediately be brought to the attention of the Commission and may result in disciplinary action or other sanctions, including a charge of contempt of the Commission and possible referral for criminal prosecution. Any breach of this Protective Order may also result in the termination of access to classified information. Persons subject to this Protective Order are advised that unauthorized disclosure, retention, or negligent handling of classified documents or information could cause damage to the national security of the United States or may be used to the advantage of an adversary of the United States or against the interests of the United States. The purpose of this Protective Order is to ensure those authorized to receive classified information in connection with this case will never divulge that information to anyone not authorized to receive it, without prior written authorization from the OCA and in conformity with this Order.

b. The any party shall promptly notify the Chief Security Officer, Office of Special Security, upon becoming aware of any unauthorized access to or loss, theft, or other disclosure of classified information, and shall take all reasonably necessary steps to retrieve such classified information and protect it from further unauthorized disclosure or dissemination.

**10. SURVIVAL OF ORDER**

      a. The terms of this Protective Order and any signed MOU shall survive and remain in effect after the termination of this case unless otherwise determined by a court of competent jurisdiction.

      b. This Protective Order is entered without prejudice to the right of the parties to seek such additional protections or exceptions to those stated herein  as they deem necessary.

So ORDERED this __day of February 2015.



                                  *//s//*
                                  JAMES L. POHL
                                  COL, JA, USA
                                  Military Judge