# Attachment B

# MILITARY COMMISSIONS TRIAL JUDICIARY
# GUANTANAMO BAY, CUBA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**KHALID SHAIKH MOHAMMAD,<br>WALID MUHAMMAD SALIH<br>MUBARAK BIN 'ATTASH,<br>RAMZI BIN AL SHIBH,<br>ALI ABDUL AZIZ ALI,<br>MUSTAFA AHMED ADAM<br>AL HAWSAWI** | **AE 711 (RBS)**<br><br>**Mr. Bin al Shibh's Motion to Compel**<br>Production of CIA Records Related to Camp 7<br><br><br>**31 January 2020** |

**1. Timeliness:** This motion is timely filed.

**2. Relief Sought:** Mr. Bin al Shibh respectfully requests the Military Commission compel the production of requested Central Intelligence Agency (CIA) records related to Camp 7, where he has been detained since 2006.

**3. Overview**: The Defense is entitled to discovery of any CIA records related to Camp 7 that reference Mr. Bin al Shibh's detention, treatment, and conditions, or the Letterhead Memorandum (LHM) interrogations from 2007. Based on redacted citations in the Senate Select Committee on Intelligence Report on the Detention and Interrogation Program (the Report), Mr. Bin al Shibh believes these records to exist. The records are relevant and necessary to support Mr. Bin al Shibh's motion to suppress his statements as involuntary, to support future motions to suppress statements, to rebut the Government's arguments about the attenuation of his interrogations at Guantanamo, and as potential mitigating evidence.

1

**3. Burden of Proof:** The Defense bears the burden of persuasion on the motion to compel to show by a preponderance of the evidence that the requested discovery is relevant and helpful to the preparation of Mr. Bin al Shibh's defense.[1]

**4. Facts:** The U.S. Government held Mr. Bin al Shibh in secret, incommunicado detention for nearly four years, from 2002 to 2006, where he was tortured and repeatedly interrogated. Following his transfer to Guantanamo Bay in September 2006, agents of the Federal Bureau of Investigation (FBI) and Department of Defense Criminal Investigative Task Force (DoD CITF) interrogated him on 11-12 January 2007, resulting in statements that the Government now intends to use at trial. Mr. Bin al Shibh has previously provided a more thorough account of relevant facts surrounding his extended detention and torture in the RDI Program, as well as his treatment at Camp 7 and the details of his LHM interrogations, which he relies on for this Motion.[2]

According to the Report, the CIA "maintained operational control" of Camp 7 after Mr. Bin al Shibh was transferred there.[3] Mr. Bin al Shibh has been held at Camp 7 since 2006. He has continued to protest and litigate his conditions of confinement in the Camp for the last 14 years.[4]

---

[1] R.M.C. 905(c)(1)-(2).
[2] *See* AE 629 (RBS) at 8-26.
[3] S. Rep. 113-288, (hereafter "SSCI Rep.") at 160 (2014).
[4] *See, e.g.,* AE 152 (RBS) Emergency Defense Motion To Order the Cessation of External Use of Sounds and Vibrations to Interfere with Mr. Bin al Shibh's Confinement and with the Attorney-Client Relationship and to Allow Expert Inspection of his Cell, Substructure/Foundation, Surrounding Areas of the Cell, and the Cell Control Room, and subsequent filings in the series.

In its response to Mr. Bin al Shibh's motion to suppress his statements on voluntariness grounds, the Government argued that the LHM interrogations were voluntary, and specifically contended that the circumstances surrounding the interrogations are the "factual and legal crux of the voluntariness inquiry."[5] The Government relied on the assertion that in September 2006 Mr. Bin al Shibh "was transferred from the custody of the CIA to the custody of the Department of Defense (DoD) and was detained on Naval Station Guantanamo Bay, Cuba at Joint Task Force-Guantanamo's (JTF-GTMO) Camp 7."[6] The Government repeatedly argued in its motion that Mr. Bin al Shibh's circumstances had changed after his arrival at Camp 7 because he was under DoD custody. The Government has contended that Mr. Bin al Shibh was not under the operational control of the CIA after he arrived at Camp 7.[7]

The Report appears to allude to CIA records related to Mr. Bin al Shibh that were produced following his transfer to Camp 7. It notes that after Mr. Bin al Shibh was transported to Guantanamo Bay in 2006 he was placed on psychotropic medication in 2007. Footnote 428 supports this fact, and contains a partially redacted citation "[428] [REDACTED] SITE DAILY REPORT - 24 MAY 07: [REDACTED] 8904 (182103Z APR 08)"[8] The term "SITE DAILY REPORT" does not appear in any other place in the Report that Counsel are aware of. The second half of the citation follows a format that appears to be used for CIA cables throughout the Report,

---

[5] AE 629A (GOV) at 18.
[6] *Id*. at 3.
[7] *See* AE 692A (GOV) Government Motion to Reconsider AE 692, Order, Or, in the Alternative, Grant an *Ex Parte* Hearing.
[8] SSCI Rep. at 80, n.428.

3

mostly from the period between 2002 and 2006. Counsel believe that the citation in Footnote 428 references CIA documents. Counsel do not have these documents.

The Government has disputed Mr. Bin al Shibh's account of his treatment at Camp 7, disputed the contention in the Report that the CIA was in operational control of Camp 7, and argued extensively that Mr. Bin al Shibh's conditions at Camp 7 had changed sufficiently to attenuate his coercive detention and treatment by the CIA.[9]

On 30 December 2019, Defense Counsel for Mr. Bin al Shibh sent a discovery request to Trial Counsel, requesting:

1. The document(s) referenced in Footnote 428.

2. Any additional CIA cables related to Mr. Bin al Shibh, conditions at Camp 7, or the LHM interrogations, that were sent after his arrival at Guantanamo Bay in September 2006.

3. Any "SITE DAILY REPORT" related to Camp 7 or Guantanamo Bay that was produced or transmitted after Mr. Bin al Shibh's arrival at Guantanamo Bay in September 2006. It appears that the CIA created a daily report related to Camp 7.

4. Any other communications, between the CIA and any other entity or organization, related to Mr. Bin al Shibh, conditions at Camp 7, or the LHM interrogations, that were sent after his arrival at Guantanamo Bay in September 2006.[10]

The Prosecution has not yet responded to this request.[11]

**5. Law and Argument:** The Defense is entitled to the requested evidence, as it is "material to preparation of the defense."[12] R.M.C. 701(j) establishes that "[e]ach party shall have an adequate

---

[9] AE 629A (GOV) at 4-6, 36-37.
[10] Attach. B.
[11] Pursuant to AE 245 (TCO) (7 November 2013) the Commission has established a presumptive 28-day time limit for responses to discovery requests.
[12] R.M.C. 701(c)(1); *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

4

opportunity to prepare its case and no party may unreasonably impede the access of another party to a witness or evidence." In passing the Military Commissions Act (M.C.A.) of 2009, Congress itself statutorily mandated this process.[13] R.M.C. 701(c)(1) states that the Government shall permit the defense counsel to examine any books, paper, documents, photographs, tangible objects, buildings, or places so long as they are: (1) under the control of the Government, and (2) material to the preparation of the defense or intended for use by the trial counsel as evidence in the Prosecution's case-in-chief at trial.

Demonstrating materiality "is not a heavy burden" and the standard of materiality is broadly construed.[14] Evidence qualifies as material when there is any reasonable likelihood it could affect the judgment of the jury.[15] Information is material for discovery purposes "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal."[16] "[A]n accused's right to discovery is not limited to evidence that would be known to be admissible at trial. It includes materials that would assist the defense in formulating a defense strategy."[17] "Material evidence" is also not limited to exculpatory evidence.[18] It includes information that is unfavorable, as:

---

[13] *See* 10 U.S.C. § 949j ("The opportunity to obtain witnesses and evidence shall be comparable to the opportunity available to a criminal defendant in a court of the United States under article III of the Constitution").
[14] *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1998); *United States v. Marshall*, 132 F.3d 63, 67 (D.C. Cir. 1998); *United States v. Libby*, 429 F. Supp. 2d 1, 7 (D.D.C. 2006).
[15] *See Wearry v. Cain*, 136 S.Ct. 1002, 1006 (2016).
[16] *Lloyd*, 992 F.2d at 351.
[17] *United States v. Webb*, 66 M.J. 89, 92 (C.A.A.F. 2008).
[18] *See Marshall*, 132 F.3d 63 at 67; *see also Libby*, 429 F. Supp. 2d at 7.

5

> [a] defendant in possession of such evidence may alter the quantum of proof in his favor in several ways: by preparing a strategy to confront the damaging evidence at trial; by conducting an investigation to attempt to discredit that evidence; or by not presenting a defense which is undercut by such evidence.[19]

This is because "it is just as important to the preparation of a defense to know its potential pitfalls as it is to know its strengths."[20]

More broadly, Mr. Bin al Shibh has a constitutional right to present a complete defense.[21] Inseparable from this right is the right to obtain evidence.[22] Additionally, because this is a capital case, "the Eighth Amendment requires a greater degree of accuracy and fact finding than would be true in a non-capital case."[23] The penalty of death is qualitatively different than a sentence of imprisonment, and there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case, and this need affects every procedure at trial.[24]

Here, the requested evidence must be turned over to the Defense. The Government has not denied its existence, and it is material to Mr. Bin al Shibh's motion to suppress as well as any motion related to outrageous government misconduct and as mitigating evidence at any pre-sentencing hearing. If there are CIA site reports associated with Camp 7, they could provide

---

[19] *Marshall*, 132 F.3d at 68.
[20] *Id.* at 67.
[21] *See, e.g.*, *United States v. Webb,* 66 M.J. 89, 92 (C.A.A.F. 2008) ("[t]he due process clause of the Fifth Amendment guarantees that criminal defendants be afforded a meaningful opportunity to present a complete defense"), citing *California v. Trombetta,* 467 U.S. 479, 485 (1984).
[22] *See Washington v. Texas*, 388 U.S. 14, 19 (1967) (guaranteeing production of documents and witnesses under the Fifth Amendment); *Taylor v. United States*, 329 F.2d 384, 386 (5th Cir. 1964) (guaranteeing production of documents and witnesses under the Sixth Amendment).
[23] *Gilmore v. Taylor*, 508 U.S. 333, 342 (1993).
[24] *See Simmons v. South Carolina*, 512 U.S. 154, 172 (1994) (Souter, J., concurring); *Beck v. Alabama*, 447 U.S. 625, 638 (1980); *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

6

evidence about any continued involvement of the CIA in the detention and treatment of Mr. Bin al Shibh or in the planning and execution of the LHM interrogations, show any ongoing collaboration between the CIA and the DoD or FBI, and provide details about his detention that are not available in any other source or that contradict the information from other sources.

Indeed, the Government has asked the Commission to focus on the circumstances surrounding the LHM interrogations in its arguments against suppression. It has put facts related to the requested evidence into dispute by contending that the interrogations were separate from the RDI Program and that Camp 7 was not under the operational control of the CIA. Given the Commission's duty to consider the totality of circumstances surrounding the LHM interrogations—including both the conditions of the interrogations themselves and their connections to earlier RDI treatment and interrogations—the Defense must have access to all evidence that could demonstrate why the statements must be suppressed or refute the Government's theories of voluntariness. Mr. Bin al Shibh must also have a full accounting of his detention to use as mitigating evidence in any pre-sentencing hearing. The Government itself has conceded the relevance of information related to any involvement of the CIA at Camp 7 and in the lead up to the LHM interrogations by putting the former Camp 7 commander on the stand and having him testify about these matters. The Government must now provide the requested discovery.

**6. Oral Argument**: Mr. Bin al Shibh requests oral argument on this motion.

**7. Witnesses**: None

**8. Conference with Opposing Counsel**: Counsel conferenced the motion with the Government at 7:51AM on 30 January, 2020 and did not receive a response.

**9. Attachments:**

    a. Certificate of Service

    b. Defense Discovery Request DR-SSCI Footnote 428-RBS-2019-12-30

    c. Proposed Order

Respectfully submitted,

| | |
|---|---|
| //s// | //s// |
| JAMES P. HARRINGTON | WYATT A. FEELER |
| Learned Counsel | Defense Counsel |
| | |
| //s// | //s// |
| VIRGINIA M. BARE | JOHN M. B. BALOUZIYEH |
| Maj, USAF | CPT, USA |
| Defense Counsel | Defense Counsel |
| | |
| //s// | //s// |
| DONNA R. CLINE | VIVIAN HERNANDEZ |
| Defense Counsel | Defense Counsel |

*Counsel for Mr. Bin al Shibh*

8

# ATTACHMENT A

## CERTIFICATE OF SERVICE

I certify that on 31 January 2020, I electronically filed the foregoing motion and served it on all counsel of record by e-mail.

>//s//
>JAMES P. HARRINGTON
>Learned Counsel

# ATTACHMENT B



**DEPARTMENT OF DEFENSE**
**MILITARY COMMISSIONS DEFENSE ORGANIZATION**
**1620 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1620**

30 December 2019

MEMORANDUM FOR TRIAL COUNSEL

FROM: Wyatt Feeler, Defense Counsel for Mr. Ramzi Bin al Shibh

SUBJECT: DEFENSE DISCOVERY REQUEST RELATED TO CIA CAMP 7 RECORDS

Mr. Bin al Shibh, by and through undersigned counsel pursuant to R.M.C 701, 10 U.S.C. § 949p-4, 10 U.S.C. § 949j, the Due Process Clause of the Fifth Amendment, the Confrontation Clause to the Sixth Amendment, and the Compulsory Process Clause of the Sixth Amendment to the United States Constitution, requests the Government provide the following discovery. Failure to provide the requested information will deny Mr. Bin al Shibh his rights to the due process of law, the effective assistance of counsel, and his right to humane treatment under international law as well as the right to be free from cruel and unusual punishment.

## DEFINITIONS

For purposes of these requests for production, the following definitions apply:

1. The terms "document" or "record" should be construed as broadly as possible, and include any tangible recording, however made, of information or data; any written, printed, recorded, taped, electronically or digitally encoded, graphic, or other information. These terms include (without limitation) notes, correspondence, papers, communications of any nature, telegrams, telexes, memoranda, facsimiles, material stored electronically, electronic mail messages, electronic mail or text messages sent or received from a handheld device, notebooks of any character, summaries or records of personal conversations, diaries and calendars, routing slips or memoranda, reports, publications, books, minutes or recordings of meetings, transcripts of oral testimony, contracts and agreements, court papers, reports or summaries of negotiations, reports or summaries of investigations, photographs, films, videotapes, sketches, court papers, brochures, advertisements, promotional literature, pamphlets, press releases, instructions, tape recordings, records, computer databases, and revisions and drafts of any documents.

2. "You" and "your" refer to the Government, its agents, its representatives, its attorneys, and/or any other person acting on its behalf.

3. "Known to you" and "knowledge of" mean all matters known to the Government, its attorneys, its agents, its representatives, its employees, or to anyone whom the Government may control.

4. "Communications" means the imparting or exchanging of information regardless of the method used to impart or exchange the information.

**Defense Discovery Request: DR-SSCI Footnote 428**

## BACKGROUND

On 11-12 January 2007, Mr. Bin al Shibh was interrogated at Guantanamo Bay, Cuba. The Government now seeks to introduce the Letterhead Memorandum (LHM) statements from these interrogations. On 10 June 2019, Mr. Bin al Shibh filed a motion to suppress the statements as involuntary, and the issue is currently pending before the Military Commission. Mr. Bin al Shibh relies on both his treatment in the Rendition, Detention, and Interrogation (RDI) Program and his treatment at Camp 7 up to and including the LHM interrogations, as well as the continued involvement of the CIA at Camp 7. Mr. Bin al Shibh anticipates moving to suppress the statements on additional legal grounds. Mr. Bin al Shibh's treatment is also relevant to any future pre-sentencing hearing.

The Government has disputed Mr. Bin al Shibh's account of his treatment at Camp 7, disputed the contention in the Senate Select Committee on Intelligence Report on the RDI Program (the "Report") that the CIA was in operational control of Camp 7, and argued extensively that Mr. Bin al Shibh's conditions at Camp 7 had changed sufficiently to attenuate his coercive detention and treatment by the CIA.

The Report details aspects of Mr. Bin al Shibh's lengthy, incommunicado detention and torture by the CIA. It notes that after Mr. Bin al Shibh was transported to Guantanamo Bay in 2006 he was placed on psychotropic medication in 2007. Footnote 428 supports this fact, and contains a partially redacted citation:

> [428] [REDACTED] SITE DAILY REPORT - 24 MAY 07: [REDACTED] 8904 (182103Z APR 08)

The term "SITE DAILY REPORT" does not appear in any other place in the Report that Counsel are aware of. The second half of the citation follows a format that appears to be used for CIA cables throughout the Report, mostly from the period between 2002 and 2006. Counsel believe that the citation in Footnote 428 references CIA documents.

## DISCOVERY REQUESTS

Mr. Bin al Shibh requests that the Government provide:

1. The document(s) referenced in Footnote 428.

2. Any additional CIA cables related to Mr. Bin al Shibh, conditions at Camp 7, or the LHM interrogations, that were sent after his arrival at Guantanamo Bay in September 2006.

3. Any "SITE DAILY REPORT" related to Camp 7 or Guantanamo Bay that was produced or transmitted after Mr. Bin al Shibh's arrival at Guantanamo Bay in September 2006. It appears that the CIA created a daily report related to Camp 7.

4. Any other communications, between the CIA and any other entity or organization, related to Mr. Bin al Shibh, conditions at Camp 7, or the LHM interrogations, that were sent after his arrival at Guantanamo Bay in September 2006.

The Government must produce information that is both "material to the preparation of the defense"

**Defense Discovery Request: DR-SSCI Footnote 428**

of Mr. Bin al Shibh and "within the possession, custody, or control of the Government." R.M.C. 701(c). Any documents and communications listed above are within the possession, custody, or control of the Government. These documents and communications relate directly Mr. Bin al Shibh's detention at Guantanamo Bay, the circumstances leading up to his 2007 LHM statements, and the conduct of the Government in detaining him.

Mr. Bin al Shibh requests a response by **Thursday, 30 January 2019**. The point of contact for this request is Mr. Wyatt Feeler at wyatt.a.feeler.civ

Respectfully Submitted,

//s//
WYATT A. FEELER
Defense Counsel

**Defense Discovery Request: DR-SSCI Footnote 428**

Filed with TJ
31 January 2020

Appellate Exhibit 711 (RBS)
Page 14 of 17

UNCLASSIFIED//FOR PUBLIC RELEASE

# ATTACHMENT C

MILITARY COMMISSIONS TRIAL JUDICIARY
GUANTANAMO BAY, CUBA

| UNITED STATES OF AMERICA<br><br>v.<br><br>KHALID SHAIKH MOHAMMAD;<br>WALID MUHAMMAD SALIH<br>MUBARAK BIN 'ATTASH;<br>RAMZI BINALSHIBH;<br>ALI ABDUL AZIZ ALI;<br>MUSTAFA AHMED AL HAWSAWI | AE 711___<br><br>ORDER<br><br>Mr. Bin al Shibh's Motion to Compel Production of CIA Records Related to Camp 7<br><br>__ February 2020 |
|---|---|

1. This Order is issued pursuant to the authority under the Military Commissions Act of 2009 (10 U.S.C. §§ 948, et. seq.) and the Manual for Military Commissions, to include, but not limited to: Rule for Military Commissions (R.M.C.) 905(b); and Regulation for Trial by Military Commissions § 17-3.

2. Accordingly, IT IS HEREBY ORDERED that, no later than __ February 2020, the Government shall produce all requested discovery in AE 711 (RBS), to include:

   1. The document(s) referenced in Footnote 428.

   2. Any additional CIA cables related to Mr. Bin al Shibh, conditions at Camp 7, or the LHM interrogations, that were sent after his arrival at Guantanamo Bay in September 2006.

   3. Any "SITE DAILY REPORT" related to Camp 7 or Guantanamo Bay that was produced or transmitted after Mr. Bin al Shibh's arrival at Guantanamo Bay in September 2006. It appears that the CIA created a daily report related to Camp 7.

   4. Any other communications, between the CIA and any other entity or organization, related to Mr. Bin al Shibh, conditions at Camp 7, or the LHM interrogations, that were sent after his arrival at Guantanamo Bay in September 2006.

So **ORDERED** this ____ of February 2020.

                                                            _____
                                                            W. SHANE COHEN, Colonel, USAF
                                                            Military Judge
                                                           Military Commissions Trial Judiciary

DRAFT ORDER / DEFENSE / 31 Jan 20