IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                              )
JASON LEOPOLD,                )
                              )
     Plaintiff,               )
                              )
          v.                  )     Case No. 13-cv-1324 (JEB)
                              )
CENTRAL INTELLIGENCE AGENCY,  )
                              )
     Defendant.               )
                              )
```

DECLARATION OF MARTHA M. LUTZ
CHIEF OF THE LITIGATION SUPPORT UNIT
CENTRAL INTELLIGENCE AGENCY

I, MARTHA M. LUTZ, hereby declare and state:

1.     I am the Chief of the Litigation Support Unit of the
Central Intelligence Agency ("CIA" or "Agency").  I have held
this position since October 2012.  Prior to assuming this
position, I served as the Information Review Officer ("IRO") for
the Director's Area of the CIA for over thirteen years.  In that
capacity, I was responsible for making classification and
release determinations for information originating within the
Director's Area, which includes, among other offices, the Office
of the Director of the CIA, the Office of Congressional Affairs,
and the Office of General Counsel.  Since 1989, I have held
other administrative and professional positions within the CIA.

2.     As the Chief of the Litigation Support Unit, I am
responsible for the classification review of CIA documents and

1

information that may be the subject of court proceedings or
public requests for information under the Freedom of Information
Act ("FOIA"), 5 U.S.C. § 552.  I am a senior CIA official and
hold original classification authority at the TOP SECRET level
under written delegation of authority pursuant to section 1.3(c)
of Executive Order No. 13526.  Because I hold original
classification authority, I am authorized to assess the current,
proper classification of CIA information, up to and including
TOP SECRET information, based on the classification criteria of
Executive Order 13526 and applicable regulations.

    3.    Through the exercise of my official duties, I am
familiar with this civil action and the underlying FOIA request.
I make the following statements based upon my personal knowledge
and information made available to me in my official capacity.

I. PLAINTIFF'S FOIA REQUEST

    4.    This declaration addresses plaintiff's FOIA request,
dated 28 April 2014, which sought "the CIA's copy of the 480-
page executive summary of the Senate Select Committee on
Intelligence's (SSCI) report on the agency's detention and
interrogation program."  A copy of plaintiff's request is
attached as Exhibit A.  Additionally, I note that this case
initially concerned a separate request made by plaintiff to the
Department of Justice for its copy of the Executive Summary.
See ECF No. 17.  However, when plaintiff amended his complaint

to include the request to CIA, he substituted the Agency as a defendant in this matter.

## II. RECORD AT ISSUE

5.    In March 2009, the SSCI commenced a study of the CIA's former detention and interrogation program.  On 13 December 2012, the SSCI approved the *Committee Study of the CIA's Detention and Interrogation Program* ("Committee Study"), which included a separate Executive Summary and 20 Findings and Conclusions.  The Committee Study was subsequently circulated to Executive Branch agencies for their review and comment.  After receiving the CIA's response and the SSCI Minority Staff's views, the SSCI revised certain findings and conclusions and updated the Committee Study.  On 3 April 2014, the SSCI voted to send the Executive Summary and Findings and Conclusions ("Executive Summary") of the updated Committee Study to the President for declassification.  A copy of Chairman Dianne Feinstein's letter is attached as Exhibit B.  The SSCI requested that the Executive Summary be declassified "quickly and with minimal redactions."  *Id.*

6.    The Director of National Intelligence ("DNI") and the CIA, in consultation with other Executive Branch agencies, conducted a declassification review of the April 2014 Executive Summary.  On August 1, 2014, at the direction of the President, the DNI declassified a redacted version of that document and the

3

President delivered it to SSCI that day.  Shortly thereafter,
the Executive Branch engaged in extensive discussions with the
SSCI about additional material within the Executive Summary
which the SCCI sought to be declassified and released.  At the
conclusion of those discussions, the SSCI delivered to the
Executive Branch a new version of the Executive Summary for
classification review.  A declassified version of the Executive
Summary was transmitted to the SSCI for its unrestricted
disposition on 8 December 2014.  The SSCI publicly released a
final version of the Executive Summary the following day.

     7.    I note that the version of the Executive Summary
released by the SSCI and addressed in this declaration was not
in existence at the time of plaintiff's request.  However, in
the interest of efficiency, the CIA offers the following
rationale for the redacted material in the final version of the
Executive Summary that was publicly released by the SSCI.

     8.    The Executive Summary released by the SSCI is a 499-
page document, which contains minimal redactions.  The redacted
material is limited to discrete pieces of classified and
statutorily-protected material and/or personally-identifying
information that implicate an individual's privacy interest,
resulting in a document that is approximately seven percent
redacted.  The vast majority of the redactions in the Executive
Summary concern CIA equities.  There are also limited redactions

requested by Department of State, the National Security Agency, the Department of Defense, and the Federal Bureau of Investigation.  The CIA has consulted with these agencies in connection with the instant filing, which addresses all redactions in the document.  As explained below, limited classified, statutorily-protected, and personally-identifiable information was redacted from the Executive Summary -- information which clearly falls within the ambit of Exemptions (b)(1), (b)(3) and (b)(6).

## III. FOIA EXEMPTIONS PROTECTING CLASSIFIED INFORMATION

### A. Exemption (b)(1)

9.    Exemption (b)(1) provides that the FOIA does not require the production of records that are:  "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).  As explained below, the Exemption (b)(1) withholdings in the documents at issue satisfy the procedural and the substantive requirements of Executive Order 13526.

10.    Section 1.1(a) of Executive Order 13526 provides that information may be originally classified under the terms of this order if the following conditions are met: (1) an original classification authority is classifying the information; (2) the

information is owned by, produced by or for, or is under the control of the U.S. Government; (3) the information falls within one or more of the categories of information listed in section 1.4 of Executive Order 13526; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in some level of damage to the national security, and the original classification authority is able to identify or describe the damage.  The Executive Order also mandates that records be properly marked and requires that records not be classified for an improper purpose.

     i.    **Procedural Requirements**

    11.   <u>Original classification authority.</u>  Pursuant to a written delegation of authority in accordance with Executive Order 13526, I hold original classification authority at the TOP SECRET level.  Therefore, I am authorized to conduct classification reviews and to make original classification decisions.  I have determined that certain information in the record at issue is currently and properly classified.

    12.   <u>U.S. Government information</u>.  The information at issue is owned by the U.S. Government, was produced by or for the U.S. Government, and is under the control of the U.S. Government.

6

13.    Classification categories in Section 1.4 of the
Executive Order.  Exemption (b)(1) is asserted in this case to
protect information that concerns "intelligence activities
(including covert action), intelligence sources or methods, or
cryptology," pursuant to section 1.4(c) of Executive Order
13526.  Additionally, Exemption (b)(1) also applies to
information that pertains to "foreign relations or foreign
activities of the United States, including confidential sources"
under section 1.4(d).

14.    Damage to the national security.  I have determined
that certain information contained in the record at issue is
classified TOP SECRET, because it constitutes information the
unauthorized disclosure of which could reasonably be expected to
result in damage to the national security.

15.    Proper purpose.  With respect to the information for
which Exemption (b)(1) is asserted in this case, I have
determined that this information has not been classified in
order to conceal violations of law, inefficiency, or
administrative error; prevent embarrassment to a person,
organization or agency; restrain competition; or prevent or
delay the release of information that does not require
protection in the interests of national security.

16.    Marking.  The document is properly marked in
accordance with section 1.6 of the Executive Order.

7

## ii. Substantive Requirements

17.   As explained below, in the course of this litigation,
I have reviewed the responsive record and determined that it
contains certain information that is currently and properly
classified at the TOP SECRET level.  Specifically, I have
determined that this information has been properly withheld
because its disclosure could lead to the identification of
intelligence sources, methods and activities and/or cause damage
to foreign relations or foreign activities of the United States,
including confidential sources, within the meaning of sections
1.4(c) and 1.4(d) of Executive Order 13526.  As such, disclosure
of this information could reasonably be expected to result in
exceptionally grave damage to national security.

### B. Exemption (b)(3)

18.   Exemption (b)(3) protects information that is
specifically exempted from disclosure by statute.  A withholding
statute under Exemption (b)(3) must (A) require that the matters
be withheld from the public in such a manner as to leave no
discretion on the issue, or (B) establish particular criteria
for withholding or refer to particular types of matters to be
withheld.  5 U.S.C. § 552(b)(3).

19.   Here, the CIA has determined that Section 102A(i)(1)
of the National Security Act of 1947, as amended, 50 U.S.C.
§ 3024 (the "National Security Act"), which provides that the

Director of National Intelligence "shall protect intelligence sources and methods from unauthorized disclosure," also applies to the information for which Exemption (b)(1) was asserted.  I note that the National Security Act has been widely recognized by courts to constitute a withholding statute in accordance with Exemption (b)(3).  In this case, the National Security Act covers all of the information protected by Exemption (b)(1).

20.   The CIA also invoked Section 6 of the Central Intelligence Agency Act of 1949, as amended, 50 U.S.C. § 3507 (the "CIA Act"), in conjunction with Exemption (b)(3).  Section 6 of the CIA Act protects from disclosure information that would reveal the CIA's organization, functions, including the function of protecting intelligence sources and methods, names, official titles, salaries, or numbers of personnel employed by the CIA.  The CIA Act has been widely recognized by courts to be a federal statute that "establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  Here, the CIA Act applies to identifying information of Agency personnel, including covert personnel, as well as foreign liaison and human sources of intelligence.  Neither of these statutes requires that the CIA demonstrate harm in order to withhold any applicable material, but the harm that would be occasioned by disclosure of this information is described in full below.

9

IV. <u>DAMAGE TO NATIONAL SECURITY</u>

21.   The information redacted from the Executive Summary consists of specific intelligence sources, methods and activities of the CIA and other federal agencies.  Disclosure of this information could reasonably be expected to harm national security because it would reveal certain capabilities, activities, and intelligence priorities of U.S. Government, which, in turn, could inhibit the intelligence-gathering. Accordingly, this information has been redacted from the Executive Summary and is exempt from disclosure pursuant to Exemption (b)(1).  Additionally, Exemption (b)(3) in connection with the National Security Act also applies to all the information described below given that it falls squarely within the intelligence sources and methods protected by the statute. To the greatest extent possible, I have attempted to explain on the public record the nature of the information that was redacted from the Executive Summary.  Should the court require additional details about the redacted information, the Agency is prepared to submit an *in camera, ex parte* declaration for that purpose.

22.   <u>Intelligence Sources</u>.  Certain redacted information in the Executive Summary would reveal specific intelligence activities, sources and methods utilized by the CIA or by other government agencies.  One of the major functions of the

Intelligence Community is to collect foreign intelligence from around the world for the President and other United States Government officials to use in making policy decisions.  To accomplish this function, the CIA and other agencies must rely on information from knowledgeable sources, which can be obtained only under an arrangement of absolute secrecy.  Intelligence sources will rarely furnish information unless they receive assurances that the fact of their cooperation and the information that they provide will be kept secret.  In other words, intelligence sources must be certain that the U.S. Government will do everything in its power to ward against the public disclosure of the intelligence shared and how that information was acquired.

23.  *Human Sources*.  Some of the information redacted in the report consists of intelligence gathered by human sources on behalf of the CIA.  The CIA relies on individuals around the world to collect foreign intelligence, and it does so with the promise that the CIA will keep their identities secret and prevent public disclosure.  This is because the CIA's revelation of this secret relationship could harm the individual who frequently cooperates without the knowledge of his or her government.  For example, in the case of a foreign national abroad who cooperates with the CIA, the consequences of the disclosure of this relationship are often swift and far-ranging,

11

from economic reprisals to harassment, imprisonment, and even death.  In addition, such disclosure could jeopardize the lives of individuals with whom the foreign national has had contact, including his or her family and associates.

24.  Moreover, the release of information in the Executive Summary that would or could identify an intelligence source would damage the CIA's credibility with all other current intelligence sources and undermine the CIA's ability to recruit future sources.  As stated previously, most individuals will not cooperate with the CIA unless they have confidence that their identities will remain forever secret.  Additionally, the CIA itself has a primary interest in keeping these identities secret, not only to protect the sources of specific intelligence, but also to demonstrate to other individuals and future sources that they can trust the CIA to preserve the secrecy of the relationship.

25.  If a potential source has any doubts about the ability of the CIA to preserve secrecy -- that is, if he or she were to learn that the CIA had disclosed the identity of another source – they would be less likely to cooperate with the CIA.  In other words, sources, be they present or future, usually will not work for the CIA if they are convinced or believe that the CIA may not protect their identities.  The loss of such intelligence sources along with the corresponding loss of the critical

12

intelligence that they provide, would seriously and adversely affect the national security of the United States.  For these reasons, the human sources information in the Executive Summary must be protected.

26.   *Foreign Liaison and Government Information.*  Foreign liaison information is information that the U.S. Government obtains clandestinely from foreign intelligence services and government officials.  Utilizing these intelligence liaison relationships, the CIA collects intelligence and provides national security and foreign policy officials with material that is critical to informed decision making -- information and assistance critical to U.S. counterterrorism operations that the CIA cannot obtain through alternate sources and methods. Foreign liaison services and individual foreign government officials provide this sensitive information in strict confidence based on express assurances from the U.S. Government that the content of the information, as well as the mere fact of the relationship, will remain secret.

27.   Here, discrete pieces of foreign government and liaison information were redacted from the Executive Summary. These details would indicate the identity of intelligence sources and the specific information shared.  Disclosing the fact of the relationship, the nature of the assistance, or the information provided -- which is reflected in these redactions -

13

- would suggest to other foreign liaison services and foreign government officials that the U.S. Government is unable or unwilling to observe an express agreement of absolute secrecy. This perception could cause foreign liaison services to curtail cooperation on counterterrorism operations or other activities affecting U.S. national security.  Moreover, such acknowledgments could cause serious damage to relations with the foreign government that provided the information and possibly damage relationships with other governments as well.  This could result in a significant loss of intelligence information for the U.S. Government and harm other areas of cooperation and thereby cause damage to national security.

28.  <u>Intelligence Methods</u>.  The Executive Summary also contains classified material that would reveal specific intelligence methods of the CIA and other federal agencies. Generally, intelligence methods are the means by which the CIA accomplishes its mission.  The Director of the CIA has broad authority to protect intelligence methods.  Intelligence methods are valuable from an intelligence-gathering perspective only so long as they remain unknown and unsuspected.  Once the nature of an intelligence method or the fact of its use in a certain situation is discovered, its usefulness in that situation is neutralized and the ability to apply that method in other situations is significantly degraded.

29.   Even seemingly innocuous details such as dates and funding amounts associated with a particular program could reveal broader intelligence priorities and the source and methods of certain intelligence collection when juxtaposed with other publicly-available data.  For example, releasing precise dates of different events or communications would show the information available to the CIA or other intelligence agencies at a certain point in time, which could show the breadth, capabilities, and limitations of the U.S. Government's intelligence collection.  Disclosing intelligence expenditures would show the level of funding devoted to certain activities, which in turn would reveal the resources available to the Intelligence Community and the intelligence priorities of the U.S. Government.  Such disclosures could reasonably be expected to harm national security.

30.   *Covert Personnel.*  A number of redactions in the Executive Summary protect the identities of covert CIA employees.  The CIA considers the identities of its undercover employees and their activities to constitute intelligence sources and methods.  In order to carry out its mission of gathering and disseminating intelligence, the CIA places certain employees undercover to protect the fact, nature, and details of the Agency's interest in foreign activities as well as the intelligence sources and methods employed to assist in those

15

activities.   Disclosing the identity of a covert employee could expose the intelligence activities in which the employee has been involved and the sources with whom the employee has had contact.   Additionally, disclosing the identity of a covert employee could jeopardize the safety of the employee, his or her family, and sources and other persons with whom he or she has had contact.

31.   Although these individuals were referenced in pseudonym in the report, given the sensitivity of the detention and interrogation program, there is a significant concern that the release of any information that would allow for the identification of these individuals could place these persons and those associated with them in danger.   In fact, following the public release of the Executive Summary, there has been widespread speculation regarding the individuals mentioned in the Executive Summary and attempts to identify those persons. Disclosure of the pseudonyms when connected with other details contained in the Executive Summary could lead to the positive identification of those individuals.   In order for the Agency to effectively carry out its foreign-intelligence gathering mission, it is imperative that the identities of covert personnel be protected.

32.   *Field Installations*.   A number of the redactions to the Executive Summary protect the locations of covert CIA

installations and former detention centers located abroad.  The
places where the CIA maintains a presence constitute
intelligence methods of the Agency.  Official acknowledgment
that the CIA has an installation in a particular location abroad
could cause the government of the country in which the
installation is located to take countermeasures, either on its
own initiative or in response to public pressure, to eliminate
the CIA's presence within its borders.  Additionally, the
revelation of the location of a particular CIA facility could
result in terrorists and foreign intelligence services targeting
that installation and the persons associated with it.  Further,
in some cases, the disclosure of information concerning a covert
CIA installation would indicate the purpose of the facility
which, in and of itself, would reveal other intelligence
methods. Disclosure of the location of former facilities could
harm relationships with foreign liaison services, or more
broadly, cause damage to foreign relations between those
governments and the United States.

    33.   *Code Words and Pseudonyms*.  Some of the information
redacted from the Executive Summary consists of code words and
pseudonyms.  The use of code words is an intelligence method
whereby words and letter codes are substituted for actual names,
identities, or programs in order to protect intelligence sources
and other intelligence methods.  Specifically, the CIA and other

federal agencies use code words in cables and other correspondence to disguise the true name of a person or entity of operational intelligence interest, such as a source, a foreign liaison service, or a covert program.  As discussed above, the CIA also uses pseudonyms, which are essentially code names, in many of its internal communications.

34.   When obtained and matched to other information, code words and pseudonyms possess a great deal of meaning for someone able to fit them into the proper framework.  For example, the reader of a message is better able to assess the value of its contents if the reader can identify a source, an undercover employee, or an intelligence activity by the code word or pseudonym.  By using these code words, the CIA and other federal agencies add an extra measure of security, minimizing the damage that would flow from an unauthorized disclosure of intelligence information.  The disclosure of code words and pseudonyms -- especially in context or in the aggregate -- can permit foreign intelligence services and other groups to fit disparate pieces of information together and to discern or deduce the identity or nature of the person or project for which the code word or pseudonym stands.

35.   *Dissemination-Control Information*.  Certain dissemination-control information was also redacted from the Executive Summary.  The U.S. Government employs a number of

18

intelligence methods to disseminate intelligence-related information and protect it from unauthorized disclosure.  These methods include procedures for marking documents to indicate the presence of particularly sensitive information contained in the documents.  They also include some internal routing and administrative information that is used to track and control information.  Disclosure of this type of information can reveal or highlight areas of particular intelligence interest, sensitive collection sources or methods, foreign sensitivities, and procedures for gathering, protecting, and processing intelligence.

36.   <u>Intelligence Activities</u>.  There is also information in the Executive Summary that relates to classified intelligence activities.  Intelligence activities refer to the actual implementation of intelligence methods in the operational context.  Intelligence activities are highly sensitive because their disclosure often would reveal details regarding specific intelligence methods which, in turn, could provide adversaries with valuable insight into CIA operations that would impair the effectiveness of CIA's intelligence methods.

37.   If a hostile entity learns that its activities have been targeted by, or are of interest to, the CIA, it can take countermeasures to make future intelligence collection activities less effective and more dangerous.  Foreign

19

intelligence services and terrorist organizations also seek to glean from the CIA's interests what information the CIA has received, why the CIA is focused on that type of information, and how the CIA will seek to use that information for further intelligence collection efforts and clandestine intelligence activities.  If foreign intelligence services or hostile groups were to discover what the CIA has learned or not learned about certain individuals or groups, that information could be used against the CIA to thwart future intelligence operations, jeopardize human sources, and otherwise derail the CIA's intelligence collection efforts.

38.   For all of the reasons discussed above, the CIA cannot disclose the classified information in the Executive Summary relating to intelligence sources, intelligence methods, intelligence activities, and foreign relations or foreign activities.  That information remains currently and properly classified pursuant to the criteria of Executive Order 13526, as its disclosure could reasonably be expected to cause exceptionally grave damage to the national security of the United States.

39.   Additionally, Exemption (b)(3) in conjunction with the National Security Act and the CIA Act likewise apples to this information.  The National Security Act is applicable because the information relates to specific sources and methods of

intelligence collection.   In addition, the CIA Act also protects
the identity of covert personnel inasmuch as it protects the
names, titles, and functions of Agency personnel.

## V.  EXEMPTION (B)(6)

40.    Exemption (b)(6) provides that the FOIA's information-
release requirements do not apply to "personnel and medical
files and similar files, the disclosure of which would
constitute a clearly unwarranted invasion of personal privacy."
5 U.S.C. § 552(b)(6).   Courts have broadly construed the term
"similar files" to cover any personally identifying information.
Here, Exemption (b)(6) applies to personally-identifying
information of covert and overt CIA personnel, employees of
other federal agencies and other individuals merely mentioned in
the Executive Summary.

41.    Each of these persons maintains a strong privacy
interest in this information because its release could subject
them to intimidation, harassment, reputational harm,
embarrassment or unwanted contact.   The extensive media coverage
and the sensitivity and controversy surrounding the former
detention and interrogation program further heighten those
privacy concerns.   Conversely, given that the vast majority of
the Executive Summary was released without redaction -- the
addition of individuals' identities or other personal
information would not further the core purpose of the FOIA --

informing the public as to the operations or activities of the government.  Accordingly, because there are significant privacy concerns and no corresponding qualifying public interest in disclosure, I have determined that the release of this information would constitute a clearly unwarranted invasion of these individuals' personal privacy under Exemption (b)(6). Additionally, to the extent that the identifying information is that of Agency personnel, foreign liaison and human sources of intelligence the protections of Exemption (b)(3) in conjunction with the CIA Act jointly apply.

## VI. SEGREGABILITY

42.   In evaluating responsive documents, the CIA conducted a page-by-page and line-by-line review of the Executive Summary and concluded that all reasonably segregable non-exempt information has been released.  Indeed, as demonstrated by the released Executive Summary itself, the redactions taken were limited and discrete.  Disclosure of the redacted information would reveal classified details of the activities and specific intelligence sources and methods utilized by the CIA and other government agencies, statutorily protected information and/or personally-identifying details, which for the reasons discussed above cannot be disclosed.

\*        \*        \*

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of January 2015.

Martha M. Lutz
Chief, Litigation Support Unit
Central Intelligence Agency

23

EXHIBIT B

DIANNE FEINSTEIN, CALIFORNIA, CHAIRMAN
SAXBY CHAMBLISS, GEORGIA, VICE CHAIRMAN

JOHN D. ROCKEFELLER IV, WEST VIRGINIA   RICHARD BURR, NORTH CAROLINA
RON WYDEN, OREGON                        JAMES E. RISCH, IDAHO
BARBARA A. MIKULSKI, MARYLAND            DANIEL COATS, INDIANA
MARK UDALL, COLORADO                     MARCO RUBIO, FLORIDA
MARK WARNER, VIRGINIA                    SUSAN COLLINS, MAINE
MARTIN HEINRICH, NEW MEXICO              TOM COBURN, OKLAHOMA
ANGUS KING, MAINE

HARRY REID, NEVADA, EX OFFICIO
MITCH McCONNELL, KENTUCKY, EX OFFICIO
CARL LEVIN, MICHIGAN, EX OFFICIO
JAMES INHOFE, OKLAHOMA, EX OFFICIO

DAVID GRANNIS, STAFF DIRECTOR
MARTHA SCOTT POINDEXTER, MINORITY STAFF DIRECTOR
DESIREE THOMPSON SAYLE, CHIEF CLERK



**United States Senate**

SELECT COMMITTEE ON INTELLIGENCE

WASHINGTON, DC 20510-6475

April 7, 2014

The Honorable Barack Obama
The White House
1600 Pennsylvania Avenue NW
Washington, DC 20500

Dear Mr. President,

I am pleased to inform you that the Senate Select Committee on Intelligence has voted to send for declassification the Findings and Conclusions and Executive Summary of an updated version of the Committee's Study of the CIA's Detention and Interrogation Program. Both are enclosed. I request that you declassify these documents, and that you do so quickly and with minimal redactions. If Committee members write additional or minority views that they wish to have declassified and released as well, I will transmit those separately.

As this report covers a covert action program under the authority of the President and National Security Council, I respectfully request that the White House take the lead in the declassification process. I very much appreciate your past statements – and those of your Administration – in support of declassification of the Executive Summary and Findings and Conclusions with only redactions as necessary for remaining national security concerns. I also strongly share your Administration's goal to "ensure that such a program will not be contemplated by a future administration," as your White House Counsel wrote in a February 10, 2014, letter.

In addition to the Findings and Conclusions and Executive Summary, I will transmit separately copies of the full, updated classified report to you and to appropriate Executive Branch agencies. This report is divided into three volumes, exceeds 6,600 pages, and includes over 37,000 footnotes, and updates the version of the report I provided in December 2012. This full report should be considered as the final and official report from the Committee. I encourage and approve the

dissemination of the updated report to all relevant Executive Branch agencies, especially those who were provided with access to the previous version. This is the most comprehensive accounting of the CIA's Detention and Interrogation Program, and I believe it should be viewed within the U.S. Government as the authoritative report on the CIA's actions.

As I stated in my letter to you on December 14, 2012, the Committee's report contradicts information previously disclosed about the CIA Detention and Interrogation Program, and it raises a number of issues relating to how the CIA interacts with the White House, other parts of the Executive Branch, and Congress. I ask that your Administration declassify the Findings and Conclusions and Executive Summary of this updated report as soon as possible. I also look forward to working with you and your Administration in discussing recommendations that should be drawn from this report.

Thank you very much for your continued attention to this issue.

Sincerely yours,

Dianne Feinstein
Chairman

Enclosures: as stated

cc:     The Honorable James Clapper, Director of National Intelligence
        The Honorable John Brennan, Director, Central Intelligence Agency
        The Honorable Eric Holder, Attorney General
        The Honorable Chuck Hagel, Secretary of Defense
        The Honorable John F. Kerry, Secretary of State