Declaration of James G. Connell, III

1. My name is James G. Connell, III. I am over 18 years old and competent to make a declaration. I am the plaintiff in *Connell v. Central Intelligence Agency*, 21-cv-0627 (CRC).

*Duties as Learned Counsel*

2. I am contracted by the United States government, Department of Defense, Office of Military Commissions, as Learned Counsel pursuant to 10 U.S.C. § 949a(b)(2)(C)(ii) and Regulation for Trial by Military Commission (RTMC) § 9-1(a)(6). In 2011, I was detailed by Colonel Jeffrey P. Calwell, United States Marine Corps, as Learned Counsel for Ammar al Baluchi in *United States v. Ammar al Baluchi*, commonly known as "the 9/11 Case." In this declaration, I write only in my capacity as plaintiff and counsel for Ammar al Baluchi, and do not speak for any other element of the United States government.

3. Under RTMC 9-1(b)(2)(F), my duties as Learned Counsel include safeguarding national security information. To the best of my understanding and belief, no statement in this declaration reveals classified information.

*Classification guidance on 2013 Camp VII inspection*

4. In 2013, I and other defense attorneys in the 9/11 Case obtained an order from the military commission permitting inspection of Camp VII. At the time, Mr. al Baluchi was imprisoned in Camp VII.

5. The Office of Military Commissions, Office of the Chief Prosecutor (OCP) has repeatedly advised me that its attorneys speak for all departments and agencies of the United States, including CIA. On occasion, I have interacted with counsel for specific agencies, including CIA, but no counsel other than OCP has ever appeared (other than as a witness) on behalf of any United States department or agency in the 9/11 Case. On many occasions, OCP has represented the interests of CIA in the 9/11 Case, including with respect to CIA classification decisions, CIA *Touhy* regulations, CIA employee interviews, and other CIA equities. On many occasions, OCP has invoked national security privilege on behalf of CIA. On information and belief, OCP is an authorized representative of CIA in the 9/11 Case.

6. In preparation for the 2013 Camp VII inspection, I spoke with members of OCP (responsible for prosecutions at Guantanamo), the Office of the Staff Judge Advocate for Joint Task Force-Guantanamo (responsible for legal issues

relating to Camp VII), and the Office of Special Security (responsible for security issues in the military commissions). The discussions centered primarily on logistics and classification issues, including specific aspects of Camp VII that were classified. At no time did any member of these government agencies advise me that the existence or non-existence of information regarding CIA operational control of Camp VII was classified.

7. I participated in an inspection of parts of Camp VII in August 2013. During the Camp VII inspection, an attorney from the Office of the Staff Judge Advocate for Joint Task Force-Guantanamo escorted me and the other members of the inspection team, including a photographer from Joint Task Force-Guantanamo. Among other roles, the attorney decided what elements the inspection team was allowed to photograph. At no time did the attorney advise me that, or prohibit photography on the basis that, the existence or non-existence of information regarding CIA operational control of Camp VII was classified.

8. At the conclusion of the Camp VII inspection, I submitted the inspections team's notes and photographs to an Original Classification Authority, through the Office of Special Security, for classification review. The Original Classification Authority marked the notes and photographs SECRET//NOFORN and returned them to me. At no time did the Original Classification Authority advise me that the existence or non-existence of information regarding CIA operational control of Camp VII was classified.

*FOIA requests and responses*

9. I have reviewed Part II of Vanna Blaine's March 11, 2022 declaration. It is accurate although incomplete is some respects.

10. CIA's September 29, 2020 communication included a three-page document responsive to my request. A complete copy of CIA's September 29, 2020 letter, including the responsive document C06677259, is Attachment A to this declaration.

11. CIA's July 15, 2021 letter included two responsive documents, C06541712 (Attachment B) and C06902570 (Attachment C). CIA had previously released C06541712 with the same number but with a release date of June 10, 2016 through its electronic reading room (Attachment D). In 2018, I was aware of C06541712 and referenced it in my March 8, 2018 letter to CIA. C06902570, provided on July 15, 2021, is an expanded version of C06677259, provided on September 29, 2020.

*ODNI disclosures*

12. In the course of my duties, I have engaged in extensive research, investigation, and litigation over the connection between CIA, FBI, and DoD in the effort to obtain statements from my client and others in late 2006 and early 2007. In the course of this research, I discovered two documents in the ACLU Torture Database regarding interagency decisions over Camp VII prisoners in late 2006 (Attachments E and F).[1] The documents are on letterhead from the Office of the Director of National Intelligence (ODNI). Metadata on the Torture Database states that ODNI released the documents. I have attached the documents to pleadings in the 9/11 Case and repeatedly relied on them in oral arguments. Following Original Classification Authority review, the military commission publicly released the documents without additional redactions.[2] Despite this extensive use of the documents, no person has ever suggested to me that the documents are anything other than what they purport to be. To a reasonable professional certainty, I believe the documents to be authentic and declassified by ODNI as redacted.

*Testimony of the First Camp VII Commander*

13. During 2019, I participated in litigation and negotiations over the production of witnesses regarding Mr. al Baluchi's legal positions. As part of that process, OCP called a witness under the pseudonym First Camp VII Commander.

14. The First Camp VII Commander consented to an interview in advance of his testimony. I participated in an interview with the First Camp VII Commander with a prosecutor from OCP present to represent the interests of all United States agencies, including CIA. We reviewed a number of classified documents during the interview. At no time did either the First Camp VII Commander or the prosecutor advise me that the existence or non-existence of documents regarding CIA operational control of Camp VII was classified.

15. Prior to the testimony of the First Camp VII Commander, OCP provided written classification guidance, which it represented to be the combined

---

[1] The two documents may be found at
https://www.thetorturedatabase.org/document/agenda-re-interagency-decisions-needed-regarding-14-high-value-detainees and
https://www.thetorturedatabase.org/document/odni-memo-mfr-29-november-hvd-detainee-meeting.

[2] The military commission's public release of the two documents may be found at https://www.mc.mil/Portals/0/pdfs/KSM2/KSM%20II%20(AE538C(AAA)).PDF.

guidance of all relevant Original Classification Authorities, including CIA. During many days of witness testimony in 2019 and 2020, the military judge, CISOs, DISOs, prosecutors, and defense counsel relied extensively on this document (known at the time as AE 658A), which OCP updated several times. As an example, when I asked the First Camp VII Commander in open court, whether the Camp VII guards wearing military uniforms were in fact military, the authority to answer in open court came from the written classification guidance (*see* Exhibit G at 28658-61). An unclassified paragraph of the written classification guidance provides that while the redacted Executive Summary statement regarding CIA operation control of Camp VII is unclassified, specifics underlying that conclusion are classified. At no point does the written classification guidance, or any other classification guidance I have ever received (other than Ms. Blaine's declaration) state that the existence or non-existence of CIA documents regarding operational control of Camp VII is classified. In the course of litigating the 9/11 Case, I and others have relied extensively on the contours of classification guidance regarding CIA operational control of Camp VII, including the unclassified fact of the existence of documents regarding CIA operational control of Camp VII.

16. On November 1 and 4, 2019, the First Camp VII Commander testified under oath in the 9/11 Case (Attachment G). Stenographers employed by the United States Military Commissions Office of the Convening Authority stenographically recorded the testimony, which occurred both in open court (on a forty-second delay) and later in closed court. On information and belief, Original Classification Authorities, including CIA, reviewed the transcripts of both open and closed court, redacted them, and authorized the release of the redacted transcripts to the public. In the transcripts, "TC [MR. SWANN]" refers to counsel for the prosecution; at the time, Mr. Swann was a member of OCP.

### *Litigation over Camp VII decision-making authority*

17. As part of the extensive litigation over 2006-07 CIA-FBI-DoD cooperation in the effort to obtain statements from the defendants in the 9/11 Case, I filed a motion in March 2020 seeking production of documents regarding interagency policy process regarding Camp VII prisoners.

18. In early November 2021, the military commission held oral arguments on the motion to compel. My opening argument on the motion is attached as Exhibit H.

19. On March 8, 2022, the military commission ordered the government to produce documents relating to the interagency processes addressing the Camp VII detainees, specifically including CIA documents (Exhibit I).

20. Under U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 28, 2022.