# Attachment A



Central Intelligence Agency

Washington, D.C. 20505

29 September 2020

James G. Connell III, Esq.
Connell Law, L.L.C.
P.O. Box 141
Cabin John, MD 20818

Reference: F-2017-01877

Dear Mr. Connell:

This letter is a final response to your 23 May 2017 Freedom of Information Act request for **any and all information that relates to such "operational control" of the CIA over Guantanamo Bay detainees including but not limited to the document cited in the footnote 977 [from the Senate Select Committee on Intelligence: Committee Study of the Central Intelligence Agency's Detention and Interrogation Program report].** On 8 March 2018 you have amended your request to cover the date range from 1 September 2006 to 31 January 2007 for documents on the following subjects:

1. Whether CIA "operational control" included only Camp 7 or extended to other facilities such as Echo 2;
2. What organization had decision-making authority over Camp 7;
3. Whether CIA "operational control" ended before or after 31 January 2007;
4. Whether the "operational control" involved CIA personnel, whether employees or contractors;
5. Any detainee records maintained by the CIA during the period of "operational control," such as Detainee Inmate Management System records or the equivalent;
6. How other agencies would obtain access to detainees during the period of "operational control, such as a Memorandum of Understanding with the Federal Bureau of Investigation or Criminal Investigative Task Force";
7. How the facilities transitioned from CIA "operational control" to DOD "operational control."

We processed your request in accordance with the FOIA, 5 U.S.C. § 552, as amended, and the CIA Information Act, 50 U.S.C. § 3141, as amended. We completed a thorough search for records responsive to your request and located the enclosed document, consisting of three pages. Please note that this document was previously released in conjunction with this or other release programs.

With respect to any other records, in accordance with Section 3.6(a) of Executive Order 13526, the CIA can neither confirm nor deny the existence or nonexistence of records responsive to your request. The fact of the existence or nonexistence of such records is itself currently and properly classified and is intelligence sources and methods information protected from disclosure by

Section 6 of the CIA Act of 1949, as amended, and Section 102A(i)(l) of the National Security Act of 1947, as amended. Therefore, your request is denied pursuant to FOIA exemptions (b)(1) and (b)(3).

As the CIA Information and Privacy Coordinator, I am the CIA official responsible for this determination. You have the right to appeal this response to the Agency Release Panel, in my care, within 90 days from the date of this letter. Please include the basis of your appeal.

Please be advised that you may seek dispute resolution services from the CIA's FOIA Public Liaison or from the Office of Government Information Services (OGIS) of the National Archives and Records Administration. OGIS offers mediation services to help resolve disputes between FOIA requesters and Federal agencies. Please note, contacting CIA's FOIA Public Liaison or OGIS does not affect your right to pursue an administrative appeal.

| To contact **CIA** directly or to appeal the CIA's response to the Agency Release Panel: | To contact the **Office of Government Information Services (OGIS)** for mediation or with questions: |
|---|---|
| Information and Privacy Coordinator<br>Central Intelligence Agency<br>Washington, DC 20505<br>(703) 613-3007 (Fax)<br>(703) 613-1287 (CIA FOIA Public Liaison / FOIA Hotline) | Office of Government Information Services<br>National Archives and Records Administration<br>8601 Adelphi Road – OGIS<br>College Park, MD 20740-6001<br>(202) 741-5770<br>(877) 864-6448<br>(202) 741-5769 (Fax) / ogis@nara.gov |

If you have any questions regarding our response, you may contact the CIA's FOIA Hotline at (703) 613-1287.

Sincerely,

Mark Lilly
Information and Privacy Coordinator

Enclosure

C06677259

Approved for Release: 2018/07/09 C06677259

977-186

~~TOP SECRET~~/ (b)(1)
(b)(3) CIAAct
(b)(3) NatSecAct

## Proposed Itinerary for DCIA Visit to Guantanamo Bay
### 21 December 2006

| Time | Event | Remarks |
|------|-------|---------|
| 0845 | VIP arrival | (b)(1) (b)(3) NatSecAct |
| 0915 | Arr Officer's Landing | |
| 0930 | Rolling tour of Camp Delta | |
| | | (b)(1) (b)(3) NatSecAct |
| 1440 | Arr NEX | (b)(1) (b)(3) NatSecAct |
| 1505 | Arr Officer's Landing | |
| 1525 | Arr Leeward Pier | |
| 1530 | VIP Departure | |

~~TOP SECRET~~ (b)(1)
(b)(3) CIAAct
(b)(3) NatSecAct

Approved for Release: 2018/07/09 C06677259

# Guantanamo Bay High-Value Detainee Detention Facility

(b)(1)
(b)(3) CIAAct
(b)(3) NatSecAct

**Current Detainees:**
To date, CIA has sent fourteen high-value detainees to the high-value detention center at GTMO (Please see attachment A for their names and background information). Upon their arrival at site, all detainees are subject to the same general in-processing utilized by DoD for other detainees arriving at GTMO, including being provided a thorough medical exam by the on-site DoD physician, as well as any needed dental and psychiatric care. Per current detainee standards, each of the high value detainees is assigned a private room, basic amenities, and limited reading material. All detainees are offered daily solo recreation in a large outdoor area, as well as joint recreation time with another detainee, during which the two detainees can interact socially.

**Criteria for Future Detainees:**
In order for a detainee to be considered for transfer from the CIA program to GTMO, first the detainee must no longer be of significant intelligence value. Second, a determination must be made that the detainee would be subject to trial by military commission, as outlined by the Military Commission Act of 2006. Third, a policy decision must be made that the US Government desires to prosecute the individual in a U.S. military commission, vice transferring the detainee to a third country. Last, the Department of Defense must agree to the transfer of the detainee to GTMO.

**End Game:**
The CIA desires to maintain custody of any given detainee only so long as that detainee continues to provide significant intelligence. Once that has been accomplished (b)(1) (b)(3) CIAAct (b)(3) NatSecAct the (b)(3) CIAAct (b)(3) NatSecAct

CIA's end game is to ensure that the detainee, if deemed a continuing threat, is either _____ or transferred to GTMO to stand trial before a Military Commission. Once at GTMO, CIA's end game is to assist DoD in any way possible in the Military Commission process, while at the same time protecting CIA equities.

(b)(1)
(b)(3) CIAAct
(b)(3) NatSecAct